2009 OK 5

**Janice Carolyn CURRY, Plaintiff/Appellee,**

v.

**Heath Allen STREATER, Defendant/Appellant.**

No. 104,570.

Supreme Court of Oklahoma.

Jan. 20, 2009.

Rob L. Pyron, M. Bradley Carter, Law Office of Rob L. Pyron, Seminole, OK, for Plaintiff/Appellee.

Joe Freeman, Shawnee, OK, for Defendant/Appellant.

TAYLOR, J.

¶ 1 The dispositive questions before this Court are (1) whether the trial court abused its discretion in issuing a protective order based on the defendant's having harassed the plaintiff under title 22, section 60.1(2) of the Oklahoma Statutes; (2) whether the trial court abused its discretion in finding that there was no domestic abuse on which to base a protective order under title 22, section 60.1(1); and (3) whether the Court of Civil Appeals erroneously reversed the trial court's order of "[n]o finding of domestic abuse" and erred in affirming the issuance of the protective order. We find that the trial court abused its discretion in issuing a protective order based on harassment, that it did not abuse its discretion in finding the evi-

dence does not support a finding of domestic abuse on which to base a protective order, and that the Court of Civil Appeals erred in finding domestic abuse and in affirming the trial court.

## I.  FACTS

¶ 2  The plaintiff, Janice Carolyn Curry (Curry), is sixty-five years old, employed as a teaching assistant with the New Lima Public Schools, and the defendant's paternal aunt. The defendant, Heath Allen Streater (Streater), is a seven-year veteran with the Shawnee Police Department.

¶ 3  On November 24, 2006, Streater and Curry were attending graveside services for Henry Streater, who was Streater's father and Curry's brother.  Curry was in a car when Streater approached her.  Curry testified that Streater said, "Get this car out of here, or I'm going to whip your ass."  A witness called by Curry testified that Streater asked Curry a question to which Curry replied it was none of Streater's business. The witness testified that Streater then told Curry "to get out of there or he was going to whip her ass."  Streater and another witness testified that Streater did not threaten Curry but that Streater said, "You don't know what an ass kicking is that you accused Dathan of." [1]  Even though, the exact words exchanged by Curry and Streater are disputed, it is undisputed that there was a verbal exchange between the two while Curry was still in the car.  After the verbal exchange, Curry got out of the car and advanced toward Streater.  Streater retreated.  Curry threatened to hit Streater with a rose, and relatives intervened and separated the two.  Although there was evidence that Curry and other relatives had problems in the past, there is no evidence that Streater had previously threatened Curry.

¶ 4  On November 27, 2006, Curry filed a petition for a protective order and a request for an emergency, *ex parte* protective order. On the form petition, Curry alleged that Streater had caused or attempted to cause serious physical harm to her and that he had threatened to perform a violent act.  She did not allege that he had harassed or stalked her.  The emergency order issued, but on December 11, 2006, the parties agreed to a continuance of a hearing on the permanent protective order if the emergency order were dismissed.  On January 30, 2007, a trial was had on the permanent protective order.  At the end of trial, the court stated that it was issuing a permanent protective order against Streater and set another hearing for February 12, 2007.

¶ 5  A hearing was held on February 12, 2007.[2]  On the same day, a standardized-form protective order was filed to remain effective until July 12, 2007.  The order provides that there is "[n]o finding of domestic abuse and/or stalking," and that "Federal Firearms prohibition does not apply."

¶ 6  Streater filed a motion for a new trial, and Curry filed a motion for attorney fees. On February 28, 2007, a hearing was had on these two motions.  At the end of the hearing, the trial court stated, "I wanted to make it clear that the court found your client under Paragraph 3, the harassment provision, was the finding that the court made; not Paragraph 2 or Paragraph 1. But that the evidence was clear under Paragraph 3 that there was a harassment that had occurred." [3] In the final protection order filed on April 13, 2007, the court (1) ordered the February 12, 2007 Protective Order to remain in place as a permanent protective order, (2) denied the motion for a new trial, (3) awarded Curry $1,250.00 in attorney fees, and (4) reiterated that "the specific finding that this Protective Order was being granted under the area of

---

1.  Dathan is Curry's nephew and Streater's cousin.  There was evidence that Curry had previously accused Dathan of assaulting and battering her.

2.  There is a discrepancy in that the court clerk's docket sheet and the Court Minute show the hearing was held on February 12, 2007, and the transcript is dated February 21, 2007.  The exact

date of the hearing is irrelevant to the outcome of this case.

3.  Paragraph 3 refers to title 22, section 60.1(3) of the Oklahoma Statutes, the harassment provision.  Paragraph 1 refers to title 22, section 60.1(1), the domestic abuse provision.  Paragraph 2 refers to title 22, section 60.1(2), the stalking provision.

'harassment' within the statutory framework for Protective Orders."

¶ 7 Streater appealed. The Court of Civil Appeals found that there was no evidence of harassment. Finding that the evidence supported issuing the protective order based on "domestic abuse," *see* 22 O.S.Supp.2005, §§ 60.1(1); 22 O.S.Supp.2003, § 60.2(A), the Court of Civil Appeals effectively reversed the trial court's order finding that there was no "domestic abuse" and affirmed the issuance of the protective order. Streater filed a petition for certiorari, which this Court granted.

## II. STANDARD OF REVIEW

¶ 8 We have not before addressed the proper standard of review of a protective order and, thus, are presented with an issue of first impression. Statutory construction presents a question of law which we review *de novo. St. John Med. Ctr. v. Bilby,* 2007 OK 37, ¶ 2, 160 P.3d 978, 979. A protection order under the Protection from Domestic Abuse Act, 22 O.S.Supp.2006, §§ 60–60.18, is analogous to an injunction. Because the grant or denial of an injunction is reviewed for an abuse of discretion, *Johnson v. Ward,* 1975 OK 129, ¶ 42, 541 P.2d 182, 188, we find that proceedings under the Act also should be reviewed for an abuse of discretion. Under an abuse of discretion standard, the appellate court examines the evidence in the record and reverses only if the trial court's decision is clearly against the evidence or is contrary to a governing principle of law.

*State ex rel. Tal v. Oklahoma City,* 2002 OK 97, ¶ 3, 61 P.3d 234, 240. To reverse under an abuse of discretion standard, an appellate court must find the trial court's conclusions and judgment were clearly erroneous, against reason and evidence. *Oklahoma Tpk. Auth. v. Little,* 1993 OK 116, ¶ 6, 860 P.2d 226, 228.

## III. PROTECTION FROM DOMESTIC ABUSE ACT

¶ 9 The Protection from Domestic Abuse Act (the Act) allows a victim of domestic abuse, stalking, harassment, or rape to petition the court for a protection order. 22 O.S.Supp.2003, §§ 60.1–60.2. The two components which are relevant to this litigation are harassment, *id.* § 60.1(3); and domestic abuse by a threat of imminent physical harm, *id.* § 60.1(1), as there was no evidence of an act of physical harm. Domestic abuse is defined as "any act of physical harm, or the threat of imminent physical harm which is committed by an adult, emancipated minor, or minor child thirteen (13) years of age or older against another adult, emancipated minor or minor child who are family or household members or who are or were in a dating relationship." *Id.* § 60.1(1).[4] Harassment is defined as "a knowing and willful course or pattern of conduct by a family or household member or an individual who is or has been involved in a dating relationship with the person, directed at a specific person which seriously alarms or annoys the person, and which serves no legitimate purpose." *Id.* § 60.1(3).[5] Family or household members

---

4. The current version of title 21, subsection 644(C) of the Oklahoma Statutes defines criminal domestic abuse as

> "any assault and battery against a current or former spouse, a present spouse of a former spouse, parents, a foster parent, a child, a person otherwise related by blood or marriage, a person with whom the defendant is in a dating relationship as defined by Section 60.1 of Title 22 of the Oklahoma Statutes, an individual with whom the defendant has had a child, a person who formerly lived in the same household as the defendant, or a person living in the same household as the defendant...."

Under subsection 644(C), a first conviction of domestic abuse is punishable by county jail imprisonment for not more than one year, a fine not exceeding five thousand dollars, or both. With a subsequent conviction, imprisonment

time increases to not more than four years. *Id.* If the domestic abuse is against a pregnant person, results in great bodily harm, or is committed in a child's presence increased penalties may apply. 21 O.S.Supp.2006, § 644(D)-(F).

Criminal assault is defined in title 21, section 641 as "any willful and unlawful attempt or offer with force or violence to do a corporal hurt to another."

5. The definition of harassment was changed in 2003. 2003 Okla. Sess. Laws 1809, c. 407, § 1. The current language, "a family or household member or an individual who is or has been involved in a dating relationship with the person," requires a familial relationship and replaced the broader application of "an adult, emancipated minor, or minor thirteen (13) years of age or older."

are spouses, ex-spouses, present spouses of ex-spouses, parents, grandparents, stepparents, adoptive and foster parents, children, grandchildren, stepchildren, adopted and foster children, persons otherwise related by blood or marriage, persons are presently living or have formerly lived in the same household, and biological parents of the same child. *Id.* § 60.1(4).

¶ 10 The Act's clear purpose is preventative, and the Act provides immediate civil, nonmonetary relief for victims of domestic abuse, stalking, harassment, or rape. To effectuate its purpose, the Act provides for courts to issue civil protection orders to prevent violence before it happens.

¶ 11 As pointed out in *Katsenelenbogen v. Katsenelenbogen*, 135 Md.App. 317, 762 A.2d 198, 207 (Ct.Spec.App.2000), *vacated*, 365 Md. 122, 775 A.2d 1249 (Md.2001), that a protective order can be beneficial in that it may provide a potential victim of domestic abuse a measure of reassurance, but the unwarranted issuance of a protective order can have unjustified, irreversible consequences for a defendant. For example, an vindictive, angry ex-spouse may seek a protective order in an attempt to deny a parent rightful access to a child. A protective order may also carry with it a social stigma and have a devastating effect on a defendant's career. For example, federal law impacts a police officer's ability to possess and carry a firearm when subject to certain protective orders.[6] State law makes a person ineligible for a concealed handgun license for three years after the entry of a final protective order against the person or sixty days from the date a final protective order is vacated, cancelled or withdrawn. 21 O.S.Supp.2006, § 1290.11(A)(8). Because of the potential for misuse and the potential for unwarranted harmful results, only protective orders which meet the legislative requirements should issue. The court should not issue a protective order on the theory that it will do no harm or cause the defendant no real inconvenience.

## IV. ANALYSIS

■ ¶ 12 In addressing the trial court's finding that a protective order should issue based on harassment, an element of harassment is "a knowing and willful course or pattern of conduct." 20 O.S.Supp.2003, § 60.1(3). There is no evidence in the record of a course or pattern of threatening conduct. The evidence is that this was a one-time occurrence. We agree with the Court of Civil Appeals that the protective order based on harassment was clearly against the evidence and thus an abuse of discretion.

¶ 13 In his petition for certiorari, Streater argues that the Court of Civil Appeals incorrectly affirmed the trial court's judgment based on its finding that Streater had threatened Curry with imminent physical harm. Streater urges this Court to impose the elements of an actionable civil assault found in *Corpus Juris Secundum*, 6A C.J.S. *Assault* § 4 (2004), onto section 60.1(1)'s term "threat of imminent physical harm."[7] He submits

---

6. Federal law, 18 U.S.C. § 922(g), provides:
   It shall be unlawful for any person—
   . . .
   (8) who is subject to a court order that—
   (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
   (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
   (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
   (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child

that would reasonably be expected to cause bodily injury; or
   (9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

7. In *Brown v. Ford*, 1995 OK 101, ¶¶ 11–12 & n. 34, 905 P.2d 223, 229–230, this Court tacitly adopted the Restatement (Second) of Torts definition of civil assault as the law of Oklahoma. If we were to borrow from the law of torts, we would use the Restatement's definition, rather than that found in *Corpus Juris Secundum*, but we decline to do so because the Restatement's definition of civil assault does not conform to the

then that to constitute domestic abuse, a "threat of imminent physical harm" requires a reasonable apprehension of injury, coupled with an apparent ability to execute the threat. According to Streater's position, a conditional threat does not meet the definition of domestic abuse under the Act. Curry submits that the difference in a threat and an actual assault requires that we reject Streater's position. Based on her testimony that she was fearful, Curry appears to advocate a subjective test based on the plaintiff's perception.

▪ ¶ 14 To determine the elements of domestic abuse by threat of imminent physical harm under the Act, our goal is to determine the legislative intent. *Heldermon v. Wright*, 2006 OK 86, ¶ 12, 152 P.3d 855, 859. If a statute is unambiguous, this Court will apply the statute as it is plainly written. *Benjamin v. Butler*, 2008 OK 83, ¶ 16, 194 P.3d 1269.. Undefined words will be given their plain and ordinary meaning. *Id.*

▪ ¶ 15 We focus on the Act's relevant language of domestic abuse as a threat of imminent physical harm. 22 O.S.Supp. 2005, § 60.1(1). A threat is "[a]n expression of an intention to inflict," in this case, imminent physical harm. American Heritage Dictionary 1265 (2nd coll. ed.1976); Black's Law Dictionary 1327 (5th ed. 1979) ("A communicated intent to inflict physical or other harm on any person or on property."). Because intent is a question of subjective fact from the viewpoint of the person allegedly making the threat, *Wallace v. Wallace*, 1982 OK 80, ¶ 35, 648 P.2d 828, 834, it must be established from objective facts unless the defendant admits the intent to harm. *See id.; Goodson v. State*, 1977 OK CR 135, ¶ 15, 562 P.2d 897, 900 (In criminal proceedings, intent is most often proved by circumstantial evidence, absent an admission.). The question then is whether the actor's intent is to carry out an act of imminent physical harm, *i.e.* whether, based on the objective facts, the threat is real, not merely perceived. We agree with the court in *Vittone v. Clairmont*, 64 Mass. App.Ct. 479, 834 N.E.2d 258, 265 (2005), that in determining whether or not the threat is

real, in addition to the defendant's acts and words, a court may consider the circumstances and environment at the time of the alleged threat and the parties' (1) history, (2) relationship, (3) age, (4) intelligence, (5) health, (6) physical strength, and (7) other similar evidence that a threat is real and is likely be executed. In determining whether the defendant intended to carry out the threat, the court should look at the defendant's words and actions in light of the attendant circumstances.

▪ ¶ 16 A condition placed on a threat does not automatically take the threat from the Act's purview as Streater argues. Even though a condition is not outcome determinative of whether a protective order should issue, it is one factor to consider in evaluating whether the defendant intended to inflict imminent physical harm. Likewise, the Act does not place the focus on a plaintiff's subjective perception. A purely subjective test from the plaintiff's viewpoint would produce inconsistent results based on individualized perceptions. Such a test would lead to unreasonable results because a plaintiff's testimony that she perceived a threat would be sufficient even if the act or statement could not, under any circumstances, be construed as a threat. Both of these positions are inconsistent with the Act's purpose and its plain language.

▪ ¶ 17 We next turn to the Court of Civil Appeals' opinion finding domestic abuse by threat of imminent physical harm as a basis for affirming the trial court's judgment. The trial court's judgment adopted as its final protective order, the February 12, 2007 protective order which rejected domestic abuse as a basis for the protective order. The following evidence, although controverted, supports the trial court's finding of no domestic abuse. Streater did not threaten Curry but made a derogatory statement to her. When Curry exited the car, Streater backed away from her. There is no evidence that Streater has a history of violence. Curry told Streater's brother that she could cost Streater his job by getting the protective order. There was evidence that Curry was

Act's definition of domestic abuse or to the Act's          purpose.

the actual aggressor. Based on this evidence, it was not an abuse of discretion for the trial court to find that there was no domestic abuse. Nonetheless, the Court of Civil Appeals ignored the standard of review by effectively reversing the trial court's finding that there was no domestic abuse, reweighing the evidence, substituting its own findings for that of the trial court, and essentially issuing its own protective order based on domestic abuse. The Court of Civil Appeals was required to affirm the trial court's finding of no domestic abuse unless it was clearly erroneous, against reason and evidence. *Little,* 1993 OK 116 at ¶ 6, 860 P.2d at 228. Even though a civil appellate court in this jurisdiction may affirm a judgment based on a theory different from that reached by the trial court, *Harvey v. City of Okla. City,* 2005 OK 20, ¶ 12, 111 P.3d 239, 243, the appellate court may not re-weigh the evidence under an abuse of discretion standard to reach such a result. *See Little,* 1993 OK 116 at ¶ 6, 860 P.2d at 228.

¶ 18 The evidence supports the trial court's finding that there was no domestic abuse under the Act. Because this finding does not constitute an abuse of discretion, we will not reverse it. However, the evidence does not support a finding of harassment on which the protective order was based. Thus, we find the trial court abused its discretion in issuing the protective order.

## V. ATTORNEY FEES

¶ 19 In her application for attorney fees, Curry sought an award of fees pursuant to title 43 of the Oklahoma Statutes without stating a specific section under which she claimed fees. Oklahoma follows the American Rule for attorney fees, *i.e.,* a party must bear the costs for its legal representation, attorney fees will not be awarded absent a specific statutory or contractual provision,

and exceptions are narrowly defined. *Whitehorse v. Johnson,* 2007 OK 11, ¶ 12, 156 P.3d 41, 47. The party seeking attorney fees as a prevailing party must show a specific statutory provision applies. *See GRP of Tex., Inc. v. Eateries, Inc.,* 2001 OK 53, ¶ 11, 27 P.3d 95, 99. Curry has failed to cite a particular statutory authority which would authorize an award of attorney fees to her.[8]

¶ 20 We note subsection 60.2(C)(1) of the Act allows the trial court discretion to impose attorney fees. However, Curry did not cite this section in support of an award of attorney fees. Subsection 60.2(C)(1) provides in part:

> The court may assess court costs, service of process fees, attorney fees, other fees and filing fees against the defendant at the hearing on the petition, if a protective order is granted against the defendant; provided, the court shall have authority to waive the costs and fees if the court finds that the party does not have the ability to pay the costs and fees.[9]

22 O.S.Supp.2008, § 62.2(C)(1). Because we reverse the trial court's grant of a protective order, this provision does not allow for an attorney fee award. Because Curry failed to provide a statutory basis for an attorney fee award and because we reverse the trial court issuance of the protective order, we reverse the award of attorney fees.

## VI. CONCLUSION

¶ 21 There is no evidence in the appellate record which would support the trial court's issuance of a protective order based on harassment pursuant to subsection 60.1(3) of the Act. The trial court did not abuse its discretion in finding that the evidence did not support the issuance of a protective order based on domestic abuse under subsection 60.1(1) of the Act. The Court of Civil Appeals improperly re-weighed the evidence and sub-

---

**8.** Curry also cites to title 22, section 2002 (disclosure of evidence in a criminal case) and title 12, section 3233 (interrogatories in a civil case) in the Amended Brief in Support of Attorney's Fees, neither of which provide for an award of attorney fees but address discovery. At the hearing on attorney fees, Streater's attorney states that he believes Curry's attorney is quoting subsection 60.2(C) of the Act, but Curry's attorney fails to

give any additional authority for an award of attorney fees.

**9.** Title 22, subsections 60.2(C)(2) allows an award of attorney fees and court costs against the plaintiff only upon a "specific finding that the petition for [the] protective order [was] filed frivolously and no victim exists...."

stituted its judgment for that of the trial court. The attorney fee award is not supported by any cited authority. The Court of Civil Appeals' opinion is vacated, and the trial court's judgment is reversed with instructions to dismiss.

**COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT'S JUDGMENT REVERSED WITH INSTRUCTIONS.**

EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, KAUGER, WATT, WINCHESTER, COLBERT, REIF, JJ., concur.

OPALA, J. (by separate writing), dissents.

OPALA, J., dissenting

¶ 1 I am unable to join today's opinion which reverses the trial court's order that was issued below for the protection of the complainant (plaintiff). I would instead affirm that order together with its counsel-fee award, costs and other incidental elements of adjudication.

## I.

**THE TRIAL COURT'S PROTECTIVE ORDER, WHICH MAY NOT BE REVERSED ON REVIEW BECAUSE IT IS NOT CLEARLY CONTRARY TO THE WEIGHT OF THE EVIDENCE, IS ENTITLED TO AFFIRMANCE BY THE COMMAND OF ANCIENT ANGLO–AMERICAN LEGAL PRINCIPLES THAT GOVERN APPELLATE REVIEW OF A TRIAL COURT'S FACT FINDINGS.**

¶ 2 The record fails clearly to illuminate the origin or nature of the intrafamilial dispute preceding the incident which gave rise to the controversy. What does stand unveiled is that the complainant, a lady 65 years of age, and one of her younger nephews had a heated and unpleasant verbal exchange during a church funeral service for the complainant's brother who was the defendant's father. By phone that nephew promptly reported the exchange to the defendant, his cousin (and a nephew of the complainant), with whom he enjoyed a life-long cordiality. In the telephone conversation held shortly after the unpleasant occurrence the cousin let the defendant know he was too upset to attend the graveside ceremonies that were to follow the church service. It is in the cemetery that the defendant later angrily confronted his aunt. Their graveyard encounter provides the setting for the proof adduced in support of and defense against the protective order the complainant sought.

¶ 3 While waiting for the driver of the car in which she went to the graveside service, complainant was approached by the defendant who in very angry tones threatened to "whip her ass" if she did not leave.

¶ 4 The incident was witnessed by complainant's elderly cousin who confirmed complainant's version of the encounter. **The record is clear that complainant was not the aggressor.** She was approached by the defendant who addressed her in angry tones and vulgar language by threats that she would be **whipped** if she did not leave.

¶ 5 In the scenario unfolded by the record the role which the defendant assumed in the encounter can readily be described as that of a self-appointed avenger of a wrong, real or imagined, which he believed was visited on a relative most deserving of his protection. When allowing his law-enforcement instincts to dictate his actions at the graveside the defendant invaded the complainant's right to be free of his improper meddling by threats.

¶ 6 The record fully supports the complainant's legal right to a protective order and the defendant's utter failure to present either proof or legal theory sufficient to defeat the complainant's legal claim to affording her safety from defendant's threatening, invasive and intrusive actions.

## II.

**HARASSMENT MAY BE ESTABLISHED BY PROOF OF A SINGLE EPISODE.**

¶ 7 Harassment's meaning is defined by Subdivision 3 of 22 O.S. Supp.2005 § 60.1 as a "course or pattern of conduct". These terms do not call for more than a single episode of harassing demeanor. Pattern of

conduct is simply a synonym of "form of conduct". See Webster's Third New International Dictionary, 1961 edition.

## III.

### DEFENDANT'S THREATENING DEMEANOR IS ESTABLISHED BY CRYSTAL–CLEAR PROOF.

¶ 8 The defendant was doubtless angered by his cousin's decision not to be in attendance at graveside service. Because he ascribed to the complainant all the blame for his favorite cousin's withdrawal from funeral participation, he threatened to beat up on her as punishment to be administered for disturbing the family's plan for the funeral.

## IV.

### NO IMMUNITY APPLIES TO THE DEFENDANT'S DEMEANOR.

¶ 9 The defendant is a police officer with seven years of experience. At the time and place germane to this proceeding he was not acting in the exercise of his official police duties. He was not even on duty performing law enforcement functions. He is hence not immune here from the law's reach. At the place of his encounter in controversy the defendant had **neither** law enforcement authority **nor** land possessor's power to bar the complainant from the *locus in quo.* This case affords no opportunity for recognizing any exception from the law's general application.

## V.

### SUMMARY

¶ 10 This court sits in this case as an appellate tribunal called upon to **review** a trial court's proceedings. In this capacity it is utterly powerless to readjudicate *de novo* any of the facts found by the trial judge. Because the trial court's findings are clearly not contrary to the weight of the evidence, they must be accepted on review **as true and entitled to credence.** *Liberty Plan Co. v.*

*Francis T. Smith Lumber Co.,* 1961 OK 30, ¶ 18, 360 P.2d 500, 505.

¶ 11 The defendant may not clad himself in the mantle of an avenger of complainant's wrongdoing, real or imagined.[1] He is not immune here from the law's general application because he is a police officer. He was not acting in that capacity when this controversy arose. The complainant is hence entitled to the trial court's protective order. It rests on record proof which may not be disregarded. It is not clearly contrary to the weight of the evidence. Time-honored deference to nisi prius fact finding is here absolutely commanded. *Akin v. Missouri Pacific R. Co.,* 1998 OK 102, ¶ 35, 977 P.2d 1040, 1054.

---

1. The trial judge's thoughtful analysis of the case appears to have led him to conclude the defendant's willingness to undergo anger control counseling might serve to accelerate the end of the protective order's life. In this view I wholeheartedly concur.