2012 OK CIV APP 107

**David L. HOLEMAN, Plaintiff/Appellee,**

**v.**

**Steve Allen WHITE, Defendant/Appellant.**

**No. 108,399.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 28, 2012.

Brian Dell, Oklahoma City, Oklahoma, for Appellant.

LARRY JOPLIN, Vice–Chief Judge.

¶ 1 Appellant, Steve White, seeks review of the trial court's order granting David Holeman a protective order against White for alleged harassment and threatening emails White sent to Holeman over the course of several months. White alleges three propositions of error on appeal. First, he contends that the victim protection order (VPO) was stale, having not been brought within the proper time-frame allotted under 22 O.S. Supp.2009 § 60.4(B)(4). Second, he alleges Plaintiff's "harassment" allegations are so subjective with respect to the Plaintiff's feelings of unease that the statute is being ap-

plied in an unconstitutionally overbroad and vague manner. Third, White asserts the trial court abused its discretion in finding that White's email responses to Holeman constituted "harassment," no finding of harassment should have occurred and no VPO should have been issued.

¶ 2 Appellant/White is married to Holeman's former wife. Holeman originally filed a petition for protective order on September 14, 2009, the day White married Holeman's ex-wife, for an event that allegedly occurred on September 9, 2009. This petition was not served on White and expired, according to the procedure outlined by statute. 22 O.S. Supp.2009 § 60.4.

¶ 3 Over six months after having filed the initial petition, Holeman sought again to pursue the protective order, due to unwanted emails he received from White, when White, via his wife's email account, responded to emails Holeman sent to Mrs. White. The record contains approximately seven emails from White to Holeman, spanning from February 2009 to April 2010.

¶ 4 The email exchanges between White and Holeman were a back and forth stream of insults and one-upmanship. The record indicates Holeman would send an email to his ex-wife, in what could be perceived as a less-than-civil tone, often questioning her devotion to her and Holeman's son, threatening to report her to the social security commission for fraud, or demanding she not use the last name "Holeman." White would respond to the email on his wife's behalf in some misguided attempt at chivalrous defense, sometimes referring to Holeman as a drunk, pondering how Holeman could live with himself, and repeatedly insulting Holeman's intelligence. On more than one occasion, White threatened to contact Holeman's current love interest and inform her of her boyfriend's true personality. In what are perhaps the two most menacing statements, contained in two different emails, White writes, "[s]hould you continue to downgrade, denigrate or otherwise demean my wife, look over your shoulder … … . I will be there." In another, White writes to Holeman "that persons have been severely injured or maimed or

even lost there (sic) miserable life by continuing these practices."

¶ 5 There was no physical contact between the two men. There is no evidence in the record that either were prone to altercations or ever had any altercations between themselves or anyone else. They last spoke on the phone in 2007. White was in Holeman's driveway on two occasions in order for his wife to drop something off for Mrs. White's and Holeman's son. Mrs. White is stricken with multiple sclerosis and has difficulty driving. Although Holeman took great exception to White being in his driveway, there is no indication anything threatening occurred, White did not see Holeman on either occasion, the record does not indicate there was any valid protective order in effect barring White from the premises, although White knew he was not welcome on the property, and both men admitted Mrs. White was probably not capable of driving herself to deliver the items to her son.

¶ 6 The court noted that Holeman, seeking the protective order, was ten years younger than his wife's current husband, White. Holeman considered himself to be in excellent physical condition. At the same time, White was almost ten years older and an overweight, disabled veteran, who was admittedly not in particularly good physical condition.

¶ 7 The trial court found White's email responses to be harassment and determined the harassment would cause "the regular, reasonable person to be upset by their content." The trial court acknowledged that White's emails were responsive to statements he believed should not have been sent to his wife, but the court opined that White's choice to respond in a harassing manner could not be condoned any more than the court could condone White responding in a violent manner. As a result, the trial court issued the VPO and ordered White "to have no more communication with Mr. Holeman for any reason." From this order White brought this appeal.

¶ 8 The trial court's issuance of a protective order is reviewed by the appellate court for an abuse of discretion. *Curry v. Streater*, 2009 OK 5, ¶ 8, 213 P.3d 550, 554.

"Under an abuse of discretion standard, the appellate court examines the evidence in the record and reverses only if the trial court's decision is clearly against the evidence or is contrary to a governing principle of law." *Id.* (citing *State ex rel. Tal v. Oklahoma City*, 2002 OK 97, ¶ 3, 61 P.3d 234, 240).

¶ 9 We note Holeman did not file a response to the petition in error, nor did he file a response brief in this appeal. Therefore, this appeal proceeds on Appellant's brief only. In a case proceeding on the appellant's brief only, this court is under no duty to search the record for a basis to affirm the judgment, and where the appellant's brief is "reasonably supportive of the allegations of error" this court will ordinarily grant the relief sought by the appellant. *Sneed v. Sneed,* 1978 OK 138, 585 P.2d 1363. However, "(r)eversal is never automatic[.] [The trial court's judgment] is presumed correct until the contrary has been shown by the record." *Hamid v. Sew Original,* 1982 OK 46, 645 P.2d 496, 497 (citations omitted).

¶ 10 We first examine Appellant's third proposition of error, alleging the trial court abused its discretion in finding White's emails to Holeman constituted "harassment." The Protection from Domestic Abuse Act, 22 O.S.2001 § 60, et seq., defines "harassment" as follows:

3. "Harassment" means a knowing and willful course or pattern of conduct by a family or household member or an individual who is or has been involved in a dating relationship with the person, directed at a specific person which seriously alarms or annoys the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial distress to the person. "Harassment" shall include, but not be limited to, harassing or obscene telephone calls in violation of Section 1172 of Title 21 of the Oklahoma Statutes and fear of death or bodily injury;

22 O.S. Supp.2005 § 60.1(3). Therefore, in breaking down the harassment definition for this particular case, we must determine if the trial court had a basis for its finding that 1) a

pattern of conduct existed; 2) directed at a specific person; 3) which seriously alarms or annoys; 4) and serves no legitimate purpose; 5) that would cause a reasonable person to suffer "substantial" emotional distress; 6) and in fact did cause "substantial" emotional distress to the person.

¶ 11 "To reverse under an abuse of discretion standard, an appellate court must find the trial court's conclusions and judgment were clearly erroneous, against reason and evidence." *Curry*, 213 P.3d at 554; *Oklahoma Tpk. Auth. v. Little*, 1993 OK 116, ¶ 6, 860 P.2d 226, 228. It is clear from the court's statements at the end of the hearing that White's email telling Holeman to "look over his shoulder" and White's threats to inform Holeman's girlfriend and friends of his true nature were the most compelling elements of harassment in the court's evaluation of the evidence.

¶ 12 This is a case based entirely upon emails. These people do not speak, they do not use the phone, they do not seek out encounters with one another. The record indicates this is a pattern of an ex-husband sending less-than-civil emails to his disabled ex-wife, current husband sends insulting, less-than-civil emails in return and the cycle continues for about seven emails over about fourteen months. If the offending emails were more frequent than this, the record does not reveal it.

¶ 13 The trial court indicated Holeman would be "annoyed" by these emails, but the record does not support how the trial court made the leap from "annoyed" to issuing the VPO. In this respect, Holeman's allegations seeking his protective order are similar to the aunt's in *Curry v. Streater*, 2009 OK 5, 213 P.3d 550. In *Curry*, the aunt alleged her nephew said, "Get this car out of here, or I'm going to whip your ass." *Id.* at 553. The nephew's statement is similar to the ones made by email to Holeman, although in *Curry* the nephew and aunt were in physical proximity to one other. The court noted the importance of the Protection from Domestic Abuse Act, which was designed to "prevent violence before it happens," and examined whether the threat to the aunt was real or merely perceived. *Id.* at 555–56. The Su-

preme Court determined the record did not support the aunt's allegations of threatened violence and the VPO was wrongfully issued.

¶ 14 The subjective nature of Holeman's fear or emotional distress response in this case is similarly problematic. In *Curry*, the Oklahoma Supreme Court determined application of a plaintiff's subjective viewpoint "would produce inconsistent results based on individualized perceptions[,]" and it was important to avoid this subjective application of plaintiff's point of view when considering whether all elements of "harassment" were present. *Curry v. Streater*, 2009 OK 5, 16, 213 P.3d 550, 556. The *Curry* court also determined the Act "does not place the focus on a plaintiff's subjective perception," which is why objective facts are especially vital to the court's evaluation of a plaintiff's emotional distress or fear. *Id.* Holeman's case, like the *Curry* case, lacks objective facts that would support the court's determination that Holeman actually feared death, bodily injury or experienced emotional distress.

¶ 15 The Protection from Domestic Abuse Act serves a vital purpose, to prevent violence. 22 O.S. Supp.2003, §§ 60.1–60.2; *Curry*, 213 P.3d at 554–55. To issue Holeman's protective order trivializes the serious issues the act is charged with addressing. Holeman's annoyance and inability to turn off the computer, delete the emails or craft some other means of ceasing his communication with White is not reason enough to issue a VPO when key elements of the definition of "harassment" are lacking. 22 O.S. Supp.2005 § 60.1(3). The trial court abused its discretion in issuing the protective order against White in this case. The decision of the trial court is REVERSED and REMANDED with instructions to dismiss the protective order. Having determined the VPO should not have issued, we need not address Appellant's first two propositions of error.

¶ 16 REVERSED AND REMANDED.

BUETTNER, P.J., and GOREE, J., concur.