SUNDERLAND v. ZIMMERMAN



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:SUNDERLAND v. ZIMMERMAN

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 SUNDERLAND v. ZIMMERMAN
2019 OK CIV APP 27
Case Number: 116675
Decided: 01/07/2019
Mandate Issued: 05/15/2019
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2019 OK CIV APP 27, __ P.3d __

 


SAGE NIKOLE SUNDERLAND, Petitioner/Appellee,
v.
MICHAEL DAVID ZIMMERMAN, Defendant/Appellant.
APPEAL FROM THE DISTRICT COURT OF
WOODS COUNTY, OKLAHOMA
HONORABLE MICKEY HADWIGER, TRIAL JUDGE
REVERSED AND REMANDED
Jarrod Heath Stevenson, STEVENSON LAW FIRM, P.L.L.C., Oklahoma City, Oklahoma, for Petitioner/Appellee,
Tyler L. Gentry, GUNGOLL, JACKSON, BOX, & DEVOLL, P.C., Enid, Oklahoma, for Defendant/Appellant.
Kenneth L. Buettner, Judge:
¶1 Defendant/Appellant Michael David Zimmerman (Mr. Zimmerman) appeals the entry of a protective order against him. Petitioner/Appellee Sage Nikole Sunderland (Ms. Sunderland), the ex-girlfriend of Mr. Zimmerman, sought the protective order after their tumultuous relationship came to an end. After denying Mr. Zimmerman the opportunity to conduct discovery prior to the final hearing, the trial court granted the final protective order against him. We hold that the trial court abused its discretion by disallowing Mr. Zimmerman the opportunity to conduct discovery in accordance with the Oklahoma Discovery Code. We therefore reverse and remand with instructions to allow discovery.
¶2 Mr. Zimmerman, a resident of Alva, and Ms. Sunderland, a resident of Stillwater, met in Alva during the summer of 2017 and began a romantic relationship. When Ms. Sunderland's college classes resumed in the fall of 2017, the relationship became long-distance and the two traveled between Stillwater and Alva in order to see one another. According to the record, Mr. Zimmerman and Ms. Sunderland's relationship was fraught with jealousy and discord for nearly the entire duration.
¶3 While dating, Mr. Zimmerman and Ms. Sunderland agreed to "share" their GPS location with one another on a continuous basis. The couple also maintained an "open phone policy," where both parties would regularly inspect the social media interactions of the other by looking through the contents of each other's cellular phones. These "inspections" would result in disagreements between Mr. Zimmerman and Ms. Sunderland, during which jealous behavior and a lack of emotional restraint were often exhibited. Name-calling, use of foul language, and threats of breaking off the relationship were characteristic of these arguments.
¶4 Despite the recurrent tension between the couple, the relationship continued into late fall of that year. The disagreements eventually culminated in a final series of heated interactions on November 6, 2017. The evidence presented at trial indicates that on November 6, Ms. Sunderland became angry when Mr. Zimmerman abruptly ceased communications with her. Late that night, Ms. Sunderland drove from her place of residence in Stillwater to Mr. Zimmerman's home in Alva. En route, Ms. Sunderland continued to attempt to contact Mr. Zimmerman, indicating a state of extreme emotional distress. Upon her arrival in Alva, Ms. Sunderland learned that Mr. Zimmerman was not at his home, but was actually at the home of his ex-wife, along with his minor children. Further angered by this fact, Ms. Sunderland entered Mr. Zimmerman's house without his permission and proceeded to ransack his home.
¶5 Following this incident, around 1:00 A.M. on November 7, Ms. Sunderland contacted her parents and disclosed to them the volatile nature of her relationship with Mr. Zimmerman. Her parents consequently advised her to file a protective order against Mr. Zimmerman. Ms. Sunderland agreed and filed a Petition for Protective Order that morning. After an ex parte hearing, an Emergency Order of Protection was issued that same day, November 7, 2017. A full hearing on the Petition was set for November 15, 2017.
¶6 Both parties appeared with counsel at the November 15 hearing. Mr. Zimmerman requested a continuance, which the trial court granted and set the final hearing for December 8, 2017. Mr. Zimmerman submitted discovery requests to Ms. Sunderland on November 21, 2017, but she refused to respond to the requests. On November 28, 2017, Mr. Zimmerman filed a Motion to Shorten Time to Respond to Discovery, or, in the Alternative, Motion for Continuance. A telephonic hearing on the Motion was conducted December 5, 2017, in which the trial court denied the Motion. Mr. Zimmerman's Motion to Reconsider Ruling of December 5, 2017, was similarly denied, and Mr. Zimmerman did not receive discovery prior to the December 8, 2017 hearing.
¶7 At the December 8 hearing, Ms. Sunderland presented her own testimony, as well as text messages, pictures, and audio recordings of conversations with Mr. Zimmerman. Counsel for Mr. Zimmerman objected to the admission of the visual and audio evidence, stating Ms. Sunderland had failed to provide the evidence in response to discovery requests. Mr. Zimmerman also presented his own testimony, pictures, text messages, and an attempted partial transcription of an audio recording presented by Ms. Sunderland. Following the hearing, the trial court entered a five-year final Order of Protection against Mr. Zimmerman, which included the requirement that Mr. Zimmerman attend a 52-week batterer prevention program. Ms. Sunderland was also awarded attorney fees in the amount of $6,780.
¶8 Mr. Zimmerman now appeals from the trial court's issuance of the final Order of Protection and award of attorney fees. On appeal, Mr. Zimmerman argues (1) that the trial court abused its discretion by denying him the opportunity to conduct discovery, and (2) that the trial court's issuance of the five-year final protective order was not supported by the evidence.
¶9 Protective orders granted to victims of domestic abuse, stalking, or harassment are governed by the Protection from Domestic Abuse Act (the Act). 22 O.S. Supp. 2013 § 60.2. Proceedings under the Act are reviewed for abuse of discretion. Curry v. Streater, 2009 OK 5, ¶ 8, 213 P.3d 550. Under an abuse of discretion standard, an appellate court should examine the record on appeal and reverse only if the trial court's decision was clearly against the weight of the evidence or contrary to a governing principle of law. Id.
¶10 The first issue on appeal is whether the trial court abused its discretion by not allowing Mr. Zimmerman to conduct discovery prior to the final hearing. "The Oklahoma Discovery Code shall govern the procedures for discovery in all suits of a civil nature in all courts in this state." 12 O.S. 2011 § 3224. This Court has previously established that the remedy of a protective order afforded by the Protection from Domestic Abuse Act is civil in nature. Marquette v. Marquette, 1984 OK CIV APP 25, ¶ 10, 686 P.2d 990. It logically follows that discovery procedures applicable to all other civil proceedings should also apply to proceedings under the Act.
¶11 The Act provides: "Within fourteen (14) days of filing of the petition for a protective order, the court shall schedule a full hearing on the petition . . . ." 22 O.S. § 60.4(B)(1) (emphasis added). Ms. Sunderland asserts that this provision requires that a petition for a protective order under the Act be fully disposed of within 14 days. As described below, there is a distinction between a full hearing and a final hearing.
¶12 After a full hearing held within 14 days of the filing of the petition for a protective order, the trial court has three options: (1) grant the order, (2) deny the order, or (3) hold further hearings on the petition in order to make a final ruling. In the last instance, the trial court has discretion to issue or continue an emergency temporary order. See 22 O.S. § 60.4(B)(6). A grant or denial of the final order must be made within six months of service on the defendant, or else the petitioner has the right to request a final hearing at any point beyond the six months. Id.
¶13 Oklahoma case law provides several examples in which proceedings for a protective order under the Act extended well beyond 14 days. In Marquette v. Marquette, the petition was filed October 13, but a final hearing was not conducted until November 19 (37 days later). 1984 OK CIV APP 25, ¶¶ 2, 3. Though at least one continuance in Marquette was by agreement of the parties, the reasons for the other continuances were not specifically mentioned in the appellate opinion. Id. ¶ 3. In Curry v. Streater, more than two months elapsed between the filing of the petition and the final hearing, though the continuance was by agreement of the parties. 2009 OK 5, ¶ 4, 213 P.3d 550. And in Phillips v. Williams, the final hearing began ten months after the petition was filed and concluded approximately five months later. 2010 OK CIV APP 98, ¶¶ 2, 3, 241 P.3d 696. In Phillips, several continuances were allowed by the trial court even before the issuance of the emergency protective order, at least one of which was to allow for discovery. Id. ¶ 3 n.1.
¶14 The trial court in this case appeared to understand the distinction between a full and final hearing. Here, Ms. Sunderland filed her petition November 7, 2017. With an emergency protective order issued following an ex parte hearing on November 7, the trial court then conducted a full hearing--with both parties present with counsel--on November 15, 2017 (within 14 days of filing). Upon hearing Mr. Zimmerman's motion for a continuance, however, the court set the matter for a final hearing on December 8, 2017 (one month after the filing of the petition). This continuance was not by the consent of the parties, but was a discretionary ruling made by the court in spite of Ms. Sunderland's objection.
¶15 "It is reasonable to assume the passage of the [Protection from Domestic Abuse] Act [was] a result of increased public awareness regarding the serious nature of domestic violence." Marquette, 1984 OK CIV APP 25, ¶ 9. In passing the Act, "[t]he Legislature . . . attempted to remedy [the problem of domestic violence] by providing immediate, as well as long-range, protection for the victims of domestic abuse." Id. Yet, the Legislature acknowledged that it could not legislate undue burdens on defendants' due process rights. In so recognizing, the Legislature included certain procedural safeguards, such as requiring service upon the defendant prior to a full hearing on the petition and placing a six-month limitation on a temporary order once the defendant has been served, absent an agreement of the parties. 22 O.S. § 60.4. This preservation of parties' procedural rights is furthered by applying the Discovery Code in proceedings for protective orders under the Act, although discovery may be unnecessary in a large majority of cases, and may be restricted in accordance with 12 O.S. §3226.
¶16 Rule 1 of the Oklahoma Discovery Code states, "The Discovery Code shall be construed, administered and employed by courts and parties to secure the just, speedy and inexpensive determination of every action." 12 O.S. 2011 § 3225. In State ex rel. Protective Health Servs. v. Billings Fairchild Ctr., Inc., the Court of Civil Appeals recognized that one purpose of the Discovery Code is to allow "parties to obtain the fullest possible knowledge of the issues and facts before trial." 2007 OK CIV APP 24, ¶ 17, 158 P.3d 484 (citing Rozier v. Ford Motor Co., 573 F.2d 1332, 1346 (5th Cir. 1978)). Quoting the Fifth Circuit, the court explained: "The aim of these liberal discovery rules is to make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." Id.
¶17 Civil proceedings in Oklahoma courts are governed by the Oklahoma Discovery Code. The only exception to this principle is where the Legislature has explicitly exempted a certain type of special proceeding from the scope of the Code. See The Small Claims Procedure Act, 12 O.S. 2011 § 1760. Where the Protection from Domestic Abuse Act mentions no such exemption from the Code, parties in proceedings for protective orders under the Act are entitled to the procedures governed by the Oklahoma Discovery Code. A trial court overseeing discovery in protective order proceedings should keep in mind the intent and purposes behind both the Discovery Code and the Act, including the speedy and inexpensive disposition of legal actions, the protection of victims of domestic abuse, and the due process interests of all civil litigants.
¶18 Here, the trial court improperly determined that the Discovery Code did not apply to a proceeding for a protective order under the Protection from Domestic Abuse Act. In so doing, the trial court allowed Ms. Sunderland to "cherry-pick" favorable evidence from various records and otherwise omit unfavorable details. Had discovery been permitted, the trial court could have ensured a more complete and accurate record. Additionally, concerns for Ms. Sunderland's safety could have been quelled by the extension of the emergency temporary protective order. Considerations of expediency could have been accommodated by limiting the scope or timing of discovery pursuant to title 12 O.S. § 3226.
¶19 The trial court's holding that the Discovery Code did not apply to proceedings for protective orders under the Protection from Domestic Abuse Act was contrary to governing principles of law and was therefore an abuse of discretion. Additionally, because discovery in this case was cut short--or more accurately, nonexistent--we find it inappropriate to rule upon the sufficiency of the evidence as it supports the trial court's grant of a final protective order. We therefore reverse the final order of protection granted by the trial court and remand with instructions to allow the parties the opportunity to conduct discovery according to the Oklahoma Discovery Code.
¶20 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
GOREE, C.J., and JOPLIN, P.J. concur.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2007 OK CIV APP 24, 158 P.3d 484, STATE ex rel. PROTECTIVE HEALTH SERVICES v. BILLINGS FAIRCHILD CENTER, INC.
Discussed
 2010 OK CIV APP 98, 241 P.3d 696, PHILLIPS v. WILLIAMS
Discussed
 1984 OK CIV APP 25, 686 P.2d 990, Marquette v. Marquette
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2009 OK 5, 213 P.3d 550, CURRY v. STREATER
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 3226, General Provisions Governing Discovery
Discussed
 12 O.S. 1760, Attachment or Garnishment - Depositions - Interrogatories - New Parties - Intervention
Cited
 12 O.S. 3224, Short Title and Scope of Code
Cited
 12 O.S. 3225, Construction
Cited
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 60.2, Protective Order - Petition - Form - Filing Fee - Preparation - Protection of Animal
Cited
 22 O.S. 60.4, Hearing - Service of Process - Emergency Ex Parte Orders - Protective Orders - Period of Relief - Title to Real Property
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA