OSCN Found Document:MURLIN v. PEARMAN

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 MURLIN v. PEARMAN
2016 OK 47
Case Number: 113193
Decided: 04/26/2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 47, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 



JACQUELYN TESS MURLIN, Plaintiff/Appellee,
v.
JIMMY LEE DIAL PEARMAN, JR., Defendant/Appellant.

CERTIORARI TO COURT OF CIVIL APPEALS, DIVISION II
Honorable Jequita Napoli, Trial Judge

¶0 The Plaintiff/Appellee, Jacquelyn Tess Murlin (Tess), filed a petition for a victim protection order (VPO) against her ex-boyfriend, the Defendant/Appellant, Jimmy Lee Dial Pearman, Jr. (Pearman). After text messages between the alleged victim and Pearman's ex-wife, Theresa Marie Pearman (Theresa) revealed that the VPO filing was a collaboration between the Tess and Theresa to obtain custody in a child custody dispute against Pearman, Tess withdrew the petition. Pearman sought to have the VPO filing declared frivolous, and to recover attorney fees and costs, pursuant to 22 O.S. Supp. 2013 §60.2. The trial judge denied his request. The Court of Civil Appeals affirmed. We hold that, pursuant to 22 O. S. 2013 §60.2, the matter was frivolously filed and victimless, and that attorney fees and costs should have been awarded.

COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT REVERSED AND REMANDED WITH INSTRUCTIONS TO AWARD ATTORNEY FEES AND COSTS.

Jeffrey D. Nachimson, Oklahoma City, Oklahoma, for Plaintiff/Appellee.
Christian M. Zeaman, Edmond, Oklahoma, for Defendant/Appellant.


KAUGER, J.
¶1 The dispositive questions before this court are whether the plaintiff's petition for protective order, filed pursuant to 22 O.S. Supp. 2013 §60.2,[1] was frivolous and victimless, and whether attorney fees and costs should have been awarded. We hold that the matter was frivolously filed and victimless, and that attorney fees and costs should have been awarded.
FACTS
¶2 Jimmy Lee Pearman, Jr. and Theresa Marie Pearman filed for divorce on July 9, 2012, in the District Court of Cleveland County, Oklahoma. The decree dissolving the marriage was memorialized on June 24, 2013, however, the parties continued their litigation over matters of child custody and support of their two children. On September 12, 2014, Pearman was awarded exclusive custody of the children and Theresa was granted standard visitation.
¶3 The record reflects that Theresa met Tess, a 22 year-old college student, in early 2012, while getting a facial at a salon. The two women became friends. Theresa introduced Tess to Pearman when he helped Theresa after her car had broken down. Tess and Pearman began dating by mid-July of 2013. Tess described their relationship as one of "exclusively dating" beginning in August of 2013. According to her, this relationship caused a serious rupture in her relationship with Theresa. Text messages reflect that she had "been" with both of them. Tess and Theresa had an altercation over Tess's relationship with Pearman that was so violent that the police were called. The incident occurred in front of the children, while Tess was living with Theresa and dating Pearman.
¶4 On April 29, 2014, another event occurred at Pearman's home which is the nucleus of this appeal. The course of the evening has been described in very different terms by Pearman and Tess, although there is no testimony by him in the record. According to Tess, she was dropped off at his home by a friend after a night of drinking. The record reflects that Tess had a DUI, and a history with alcohol abuse.
¶5 According to Tess, she went into the home using a garage door opener Pearman had given her, unlocked the security system, took off her clothes except for a t-shirt and underwear, and went to sleep in one of the children's rooms. When she woke up, she went to his locked bedroom, unlocked the door with a screwdriver and walked in on him and another woman, Taylor. She says they exchanged words, that he attacked her, pushed her into the wall, shoved her face into the front door and punched her in the eye. After the incident, she stayed in his house until he took her home the next morning. The next day, she went to the Moore, Oklahoma police station and filed a report.
¶6 Text messages from Tess, and Theresa, as well as testimony from both the child custody case and this cause, suggest a different story. According to testimony and text messages, Tess was drinking in Edmond on the night in question. Throughout the entire evening she was texting Pearman, calling him over and over, wanting to come over, until it reached the point where he threatened to block her number if she did not stop. She admitted that she was intoxicated and that he never agreed for her to come to his house. According to Taylor, she and Pearman arrived at his home to find the garage open, all the lights on, a half empty bottle of vodka on the counter with a soda next to it, and Tess passed out naked in Pearman's bed.
¶7 Pearman and Taylor moved her into another bedroom to let her "sleep it off." However, she came into Pearman's bedroom twice during the night and he walked her back to the other bedroom. The third time she picked the locked door with a screwdriver, jumped on the bed, and started calling Taylor names. Tess followed Taylor into the kitchen, threw an unopened soda can at her head and then charged her. Taylor punched Tess in the face in self defense. At the trial she testified that Pearman did not hit Tess.
¶8 The record contains an extensive series of text messages between Tess and Theresa, beginning on May 3, 2014, just four days after the alleged attack in Pearman's home. Tess filed a police report complaining about his alleged assault which is not included in the record. A text message sent by Tess to Theresa states that she would not have filed a police report if it were not for the ongoing custody fight. The record does not indicate that criminal charges were ever actually filed against Pearman.
¶9 The messages imply that Theresa directed Tess to file the police report in Cleveland County, the site of the custody appeal. The messages also show that Theresa spoke with her attorney in her custody case about the filing of the Petition for Protective Order/VPO. Theresa advised Tess that the key points in filing the petition for VPO were Pearman's felony record, previous acts of domestic violence, possession of an illegal weapon and her fear. Several of the texts referenced the police report that she filed, noting that she was very intoxicated, and that she did not fully remember the incident.
¶10 The texts indicate that Tess and Theresa had rekindled their friendship with a shared goal of assisting Theresa in her custody battle against Pearman through the filing of a petition for VPO. Examples of some of the messages include:


[From Tess to Theresa]
"Just trying to help you. If I'm not creating anything but trouble, then it's you-all's thing and had no affect on me. Just trying to help you Theresa Marie."
[From Theresa to Tess]
"Custody will not include you at this point. I don't want to call you as a witness, which is why I need the VPO."
Other texts show that: 1) Theresa believed that filing the VPO would be good for the custody case and that it would be good for Theresa and her girls; and 2) the VPO would be a huge break for Theresa.
¶11 On May 5, 2014, Tess filed a petition for a protective order in the District Court of Cleveland County against Pearman. She alleged that: 1) she was physically assaulted at his residence on April 29, 2014; 2) she had filed a police report with the Moore Police Department regarding the assault; 3) Pearman was a felon because of possession of an illegal firearm; and 4) he had a violent past with previous domestic abuse.
¶12 The hearing on Tess's VPO was held on May 19, 2014. At the hearing, Theresa's attorney also represented Tess without charge. Most of the hearing concerned many text messages between Theresa and Tess regarding the VPO and their friendship and sex lives. Because of concerns about attorney-client privilege, the text messages were examined by both attorneys during a recess. Pearman's attorney used the text messages to establish the motive for filing VPO as merely an attempt to affect the ex-wife's child custody case. The court recessed so that the lawyers could review the text messages together. After recess and review of the messages, the attorney for Tess stated that:


You know, we could go and have a full hearing and you can decide whether a protective order is warranted. But the bottom line is there were texts from my client admitting, look, this happened, so on and so forth, but if it weren't for your custody case and your kids, I wouldn't even bother with a VPO.
So, you know, with that in mind, regardless, it shows that, hey, I don't need a protective order. So I advised my client to dismiss and that's what we're going to ask the Court for.
¶13 Subsequently, the trial court granted the motion to withdraw and dismissed the case. When asked to determine the matter frivolous and award attorney fees and costs, the trial court, remarked that, while the whole matter was a soap opera, embarrassing, and absurd, the ex-husband did not show that it was frivolously filed. Consequently, the trial court refused to award attorney fees and costs. A journal entry was filed on July 18, 2014.
¶14 Theresa and Tess arrived together for the May 21, 2014, custody hearing. During the hearing, Tess was called to testify and she claimed that she had not filed the VPO so that it could be used in the custody matter. However, she also testified that she wanted to dismiss the VPO and Theresa did not want her to do so because it would be detrimental to Pearman in the custody case. She also testified that she had contacted Pearman on multiple occasions after the April 29th incident because she still loved him.
¶15 On July 18, 2014, Pearman filed a motion for new trial or a motion to vacate judgment of the decision by the trial court, or in the alternative a finding that Tess's actions were frivolous and award attorney fees and costs to the him. The motion for new trial was granted, and a hearing was held on August 18, 2014. At the hearing, Pearman's attorney argued that there was a conspiracy between the two women.
¶16 After the hearing, the trial court held that, although the evidence was conflicting, there was a failure to show that the filing for a protective order was frivolous or in bad faith and victimless, indicating that a finding of each was required in order to award attorney fees and costs. No costs or attorney fees were assessed against Tess. We granted certiorari to address whether the filing was frivolous, and victimless, and whether attorney fees and costs should have been awarded pursuant to 22 O.S. 2013 §60.2.[2]
STANDARD OF REVIEW
¶17 In Curry v. Streater, 2009 OK 5, ¶8, 213 P.3d 550, we addressed the first impression question of the proper standard of review of a protective order. We analogized a protective order, under the Protection from Domestic Abuse Act, 22 O.S. 2001 §§60-60.20 et seq., in the same manner as an injunction.[3] The standard of review for the grant or denial of an injunction is whether there was an abuse of discretion by the trial judge.[4] Under an abuse of discretion standard, the appellate court examines the evidence in the record and reverses only if the trial court's decision is clearly against the evidence or is contrary to a governing principle of law.[5] To reverse under an abuse of discretion standard, an appellate court must find the trial court's conclusions and judgment were clearly erroneous, against reason and evidence.[6]
 
PURSUANT TO 22 O.S. § 60.2 THE MATTER WAS FRIVOLOUSLY FILED
AND VICTIMLESS, AND ATTORNEY FEES AND COSTS SHOULD HAVE
BEEN AWARDED.
¶18 Tess argues that nothing in the record indicates that the purpose for filing the VPO was for Theresa to gain an advantage in the custody case and that the trial court acted within its discretion in refusing to award costs and attorney fees against her. Pearman argues that repercussions should be administered for misuse of VPOs and that the statute provides the remedy of awarding attorney fees and assessing costs, but the trial court neglected to apply this remedy.
¶19 Title 22 O.S. Supp. 1982 §60.2 is part of an Act known as the Protection from Domestic Abuse Act (the Act) and it was codified in 1982.[7] At the time of codification the statutory provisions of 22 O.S. Supp. 1982 §60.2 did not require filing fees, but it did provide for the assessment of attorney fees to either party.[8] One obvious purpose of the statute was to encourage victims to pursue their legal remedies in court without regard to economic means for filing fees, yet to discourage unnecessary or frivolous filings by allowing the award of attorney fees and costs against either party.
¶20 In 2000, the statute added the term "victim" to provide "victims" of domestic abuse the opportunity for protection,[9] but nowhere in the Act was the term "victim" or frivolous defined.[10] The current provisions of 22 O.S. 2013 §60.2, provide that when a protective order has been filed frivolously and no victim exists, the court may assess attorney fees and court costs against the plaintiff.[11] The Act still did not define "victim" or "frivolous." When a statute does not define a word or words contained therein, the courts will interpret the words in their common, ordinary sense.[12] The term victim is generally defined as a person harmed by a crime, tort, or other wrong.[13] Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase whenever it occurs, except where a contrary intention plainly appears.[14] Another definition of victim is found in provisions of 21 O.S. 2011 § 142.3, the Crime Victims Compensation Act as:


a person who suffers personal injury or death as a result of criminally injurious conduct. . . .
¶21 There was no evidence of stalking, harassment, or rape and even if Tess did sustain physical injuries, the record is disparate as to who caused any injuries that she sustained. Nevertheless, the weight of the evidence in the record regarding the purpose and/or reason she filed the petition for the VPO against Pearman shows that it was to help Theresa in her custody battle, not to actually seek protection from Pearman. Furthermore, it appears that no court ever ruled on who caused the alleged injuries. Criminal charges were not pursued against Pearman or anyone else as a result of this incident.
¶22 No protective order issued. Rather, Tess withdrew the application and the court granted the request, with her attorney stating that her texts indicated that if it were not for Theresa's custody case, she would not have filed a petition for protective order. He also characterizes her request to withdraw the petition as a tacit statement that she did not need the protective order.
¶23 Because Tess was not legally determined to be Pearman's victim, and she withdrew her petition for protective order under the factual circumstances in this cause, the trial court could not have reached any other conclusion but to determine the cause victimless. The other provisions of the civil pleading code, 12 O.S. 2011 §2011.1 specifically defines frivolous as "the claim or defense was knowingly asserted in bad faith or without any rational argument based in law or facts to support the position of the litigant or to change existing law."
¶24 The statements by Tess in the text messages and the statement of her attorney in withdrawing the petition for protective order clearly show that she did not seek the petition for protective order to save herself from bodily injury at the hands of Pearman, but rather to assist his former wife in her custody case. The trial court's determination that the proceeding was not frivolous was clearly against the weight of the evidence and an abuse of direction.
¶25 The trial court also refused to award attorney fees and costs against Tess for seeking a frivolous and victimless protective order. Because the obvious purpose of the attorney fee and costs provisions in 22 O.S. 2011 §60.2 is to preclude the filing of frivolous and victimless applications, the trial court also abused its discretion in neglecting to award costs and attorney fees under the facts of this cause.
CONCLUSION
¶26 The clear weight of the evidence was that the petition for protective order was filed for the purpose of harming Pearman in his custody litigation with his former wife. The trial court abused its discretion in failing to find that the filing by Tess was frivolous. Because the petition for protective order was withdrawn, the matter, pursuant to 22 O. S. 2013 § 60.2, had no victim as a matter of law. Because this cause was both frivolous and victimless, the trial court should have awarded attorney fees and costs against Tess.
¶27 We recognize the importance of a VPO and that its purpose is obviously aimed at helping to stop violent and harassing behavior and to protect a person or their family from the person causing harm. The Legislature also recognizes this purpose by waiving filing fees so that anyone who feels threatened can legally pursue a VPO without regard to monetary resources. At the same time, VPOs are not to be used to harass or for other reason than their intended purpose. The Legislature also recognizes this by allowing court costs and attorney fees to be recovered by either party in the event the VPO was sought for an unsavory or frivolous purpose. Under the facts of this cause, the purpose of helping to stop violent and harassing behavior was not the purpose for which this VPO was primarily sought. Accordingly, the cause is reversed and remanded to the trial court to make that award and determine the appropriate amount of attorney fees, court costs and filing fees to award.

COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT REVERSED AND REMANDED WITH INSTRUCTIONS TO
AWARD ATTORNEY FEES AND COSTS.

REIF, C.J. COMBS, V.C.J., KAUGER, WATT, COLBERT, GURICH, JJ., concur.
TAYLOR, J., concurs in result.
WINCHESTER, EDMONDSON, JJ., dissent.

FOOTNOTES

[1] Title 22 O.S. Supp. 2013 §60.2 provides in pertinent part:
A. A victim of domestic abuse, a victim of stalking, a victim of harassment, a victim of rape, any adult or emancipated minor household member on behalf of any other family or household member who is a minor or incompetent, or any minor age sixteen (16) or seventeen (17) years may seek relief under the provisions of the Protection from Domestic Abuse Act. . . .
C. 1. Except as otherwise provided by this section, no filing fee, service of process fee, attorney fees or any other fee or costs shall be charged the plaintiff or victim at any time for filing a petition for a protective order whether a protective order is granted or not granted. The court may assess court costs, service of process fees, attorney fees, other fees and filing fees against the defendant at the hearing on the petition, if a protective order is granted against the defendant; provided, the court shall have authority to waive the costs and fees if the court finds that the party does not have the ability to pay the costs and fees.
2. If the court makes specific findings that a petition for a protective order has been filed frivolously and no victim exists, the court may assess attorney fees and court costs against the plaintiff. . . .
F. A court may not require the victim to seek legal sanctions against the defendant including, but not limited to, divorce, separation, paternity or criminal proceedings prior to hearing a petition for protective order.

[2] Title 22 O.S. 2013 §60.2, see note 1, supra.

[3] Curry v. Streater, 2009 OK 5, ¶ 8, 213 P.3d 550.

[4] Scott v. Oklahoma Secondary Sch. Activities Ass'n, 2013 OK 84, ¶16, 313 P.3d 891; Curry v. Streater, see note 3, supra; Johnson v. Ward, 1975 OK 129, ¶42, 541 P.2d 182, 188.

[5] Curry v. Streater, see note 3, supra; State ex rel. Tal v. Oklahoma City, 2002 OK 97, ¶3, 61 P.3d 234, 240; Abel v. Tisdale, 1980 OK 161, ¶ 29, 619 P.2d 608.

[6] Curry v. Streater, see note 3, supra; Parsons v. Volkswagen of Am., Inc., 2014 OK 111, ¶9, 341 P.3d 662; Oklahoma Tpk. Auth. v. Little, 1993 OK 116, ¶6, 860 P.2d 226, 228.

[7] Title 22 O.S. 2011 §§60-60.20.

[8] Title 22 O.S. Supp. 1982 §60.2 provides in pertinent part:
. . .c. No filing fee shall be charged the plaintiff at the time the petition is filed. The court may assess court costs and filing fees to either party at the hearing on the petition.

[9] Title 22 O.S. Supp. 2000 §60.2; Okla. Ag. Opin. No. 04-4.

[10] Other definitions are found at 22 O.S. 2011 §60.1 where such terms as domestic abuse, stalking, harassment, dating relationship and victim support person are defined. However, the term "victim" is not defined.

[11] Title 22 O.S. 2013 §60.2, see note 1, supra.

[12] American First Abstract Co. v. Western Information Systems, Inc., 1987 OK 24, ¶5, 735 P.2d 1187; Loffland Bros. Equipment v. White, 1984 OK 69, ¶7, 689 P.2d 311.

[13] Black 's Law Dictionary (10th ed. 2014).

[14] Oliver v. City of Tulsa, 1982 OK 121, ¶18, 654 P.2d 607.
 




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 24, 735 P.2d 1187, 58 OBJ 1056, American First Abstract Co. v. Western Information Systems, Inc.
Discussed
 1993 OK 116, 860 P.2d 226, 64 OBJ 2879, Oklahoma Turnpike Authority v. Little
Discussed
 2002 OK 97, 61 P.3d 234, STATE ex rel. TAL v. CITY OF OKLAHOMA CITY
Discussed
 2009 OK 5, 213 P.3d 550, CURRY v. STREATER
Discussed at Length
 1975 OK 129, 541 P.2d 182, JOHNSON v. WARD
Discussed
 2013 OK 84, 313 P.3d 891, SCOTT v. OKLAHOMA SECONDARY SCHOOL ACTIVITIES ASSOCIATION
Discussed
 2014 OK 111, 341 P.3d 662, HESS v. VOLKSWAGEN OF AMERICA, INC.
Discussed
 1980 OK 161, 619 P.2d 608, Abel v. Tisdale
Discussed
 1982 OK 121, 654 P.2d 607, Oliver v. City of Tulsa
Discussed
 1984 OK 69, 689 P.2d 311, Loffland Bros. Equipment v. White
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2011.1, Required Findings Upon Dismissal or Adjudication of Action
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 142.3, Definitions
Cited
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 60.1, Definitions
Cited
 22 O.S. 60.2, Protective Order - Petition - Form - Filing Fee - Preparation - Protection of Animal
Discussed at Length