OSCN Found Document:SHELLEM v. GRUNEWELD

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 SHELLEM v. GRUNEWELD
2023 OK 26
Case Number: 120131
Decided: 03/28/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2023 OK 26, __ P.3d __

 

 

BRIAN and JANELLE SHELLEM, Husband and Wife, individually and on behalf of their Minor Children, C.S. and M.S.; BRETT and EMILIE GARRELTS, Husband and Wife, individually and on behalf of their Minor Child, B.G.; and GRAY and THERESA EPPERLY, Husband and Wife, individually and on behalf of their Minor Children, L.E., C.E., O.E., and M.E., Plaintiffs/Appellees,
v.
ANGELA GRUNEWELD, Superintendent of Edmond Public Schools, and Edmond Board of Education Members JAMIE UNDERWOOD, CYNTHIA BENSON, KATHLEEN DUNCAN, LEE ANN KUHLMAN, and MEREDITH EXLINE, sued in their official and individual capacities, Defendants/Appellants.

ON APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY

HONORABLE DON ANDREWS, DISTRICT JUDGE

¶0 Parents, individually, and on behalf of their minor children, filed a Petition for Declaratory Judgment and Injunctive Relief and an Application for Temporary Restraining Order requesting the trial court enjoin Edmond Public School District from enforcing its quarantine policy. The quarantine policy required unvaccinated students who have not tested positive for COVID-19 within ninety days and who are identified as a close contact to quarantine for either seven or ten days; whereas vaccinated students who are identified as a close contact are not required to quarantine. The trial court denied the parents' Temporary Restraining Order, but granted a Temporary Injunction on the basis that the parents established the quarantine policy likely violated the Equal Protection Clause of the 14th Amendment to the United States Constitution. The Edmond Public School District appealed and we retained the matter. We vacate the trial court's order and grant declaratory relief.

MATTER PREVIOUSLY RETAINED FOR DISPOSITION;
ORDER OF THE DISTRICT COURT VACATED;
DECLARATORY JUDGMENT GRANTED.

Stanley M. Ward, Noble, Oklahoma, and Richard Labarthe and Alexey Tarasov, LABARTHE & TARASOV, a professional association, Norman and Oklahoma City, Oklahoma for Plaintiffs/Appellees.

F. Andrew Fugitt and Justin C. Cliburn, THE CENTER FOR EDUCATION LAW, a professional association, Oklahoma City, Oklahoma for Defendants/Appellants.

OPINION

ROWE, V.C.J.:

I. BACKGROUND

¶1 During the summer of 2021, Appellants, Edmond Public School Board Members and Edmond Public School District Superintendent, Angela Grunewald, (collectively "District") anticipated a complete return to in-person instruction for the 2021-2022 school year. Prior to the start of the school year, the Oklahoma City County Health Department ("OCCHD") expressed to District that quarantines should be recommended rather than required. In response, District prepared a standard letter that alerted parents when their child was exposed to a positive COVID-19 case, which left the responsibility "for carrying out a quarantine or not" up to the parents.[1] School began on Thursday, August 12, 2021. By the fourth day of school, District reported 140 positive cases of COVID-19 which rose to 170 positive cases on the fifth day of the school year.

¶2 Based on guidance from the Centers for Disease Control and Prevention ("CDC"), OCCHD informed District that individuals deemed a "close contact"[2] should quarantine in light of the drastic spike of positive COVID-19 cases within the first week of the school year. OCCHD strongly recommended close contacts quarantine for 7-10 days unless (A) the close contact was vaccinated against COVID-19 or (B) the close contact had tested positive in the previous 90 days (the "Policy"). The following day, District implemented a policy consistent with OCCHD's recommendation and informed parents of the Policy by email. [3]

¶3 The Policy provided that a vaccinated close contact was not required to quarantine unless he or she displayed symptoms, but an unvaccinated close contact that had not tested positive within ninety days was required to quarantine. In the case of being identified as a close contact, the unvaccinated individual was presented with two options for quarantine: (1) a 7-day quarantine, in which the individual may return to school on day 8 if he or she provides a negative COVID-19 test on or after day 5 and continues to remain symptom free; or (2) a 10-day quarantine, in which the individual may return to school on or after day 11 if he or she remains symptom free.

¶4 As a result of the Policy, several unvaccinated students were required to quarantine due to being identified as a close contact. The Appellees, parents of children enrolled in Edmond Public Schools affected by the Policy ("Parents"), individually and on behalf of their children, filed a Petition for Declaratory Judgment and Injunctive Relief and an Application for Temporary Restraining Order ("TRO") in the District Court of Oklahoma County. Parents alleged the Policy violated: (1) 70 O.S. § 1210.189(A)(1); (2) their children's Fourteenth Amendment right to procedural due process; and (3) their children's First Amendment right to freely assemble. District objected, and the TRO was denied.

¶5 Following denial of the TRO, the trial court heard testimony on Parents' Petition for Injunctive Relief. A week later, the Attorney General filed a motion for leave to file an amicus curiae brief in support of granting Parents' Injunction on the basis that the Policy violates 70 O.S.Supp.2021, § 1210.189(A)(1). District objected to the filing of the brief, but the trial court granted the Attorney General's motion. The trial court denied relief on all three counts pleaded in the Petition, but granted a Temporary Injunction based on Parents' Equal Protection Clause argument and enjoined District from implementing or enforcing the Policy.

¶6 District timely appealed raising five counts of error relating to the trial court's Equal Protection analysis and inconsistencies of the trial court's order concerning evidence of irreparable harm. In addition, the Attorney General filed an amicus curiae brief with consent of the parties suggesting to the Court that while the trial court properly enjoined District from enforcing the Policy, the trial court improperly interpreted 70 O.S.Supp.2021, § 1210.189(A)(1). Neither Parents nor District filed a response to the Attorney General's amicus brief. We retained the matter for review.

II. STANDARD OF REVIEW

¶7 To obtain a temporary injunction, a plaintiff must show that four factors weigh in his or her favor: (1) the likelihood of success on the merits; (2) irreparable harm to the party seeking the relief if the injunction is denied; (3) their threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction is in the public interest. Edwards v. Bd. Of Cnty Comm'rs of Canadian Cnty, 2015 OK 58, ¶ 12, 378 P.3d 54, 59. "The right to injunctive relief must be established by clear and convincing evidence and the nature of the injury must not be nominal, theoretical, or speculative." Id.

¶8 "A judgment issuing or refusing to issue an injunction will not be disturbed on appeal unless the lower court has abused its discretion or the decision is clearly against the weight of the evidence." Id. ¶ 11, 378 P.3d at 58. "To reverse under an abuse of discretion standard, an appellate court must find the trial court's conclusions and judgment were clearly erroneous, against reason and evidence." Murlin v. Pearman, 2016 OK 47, ¶ 17, 371 P.3d 1094, 1097. We will consider all the evidence on appeal to determine whether the trial court's granting of a temporary injunction was an abuse of discretion. Dowell v. Pletcher, 2013 OK 50, ¶ 5, 304 P.3d 457, 460.

¶9 "[A] clear abuse of discretion standard includes appellate review of both fact and law issues: 'In order to determine whether there was an abuse of discretion, a review of the facts and the law is essential.'" Christian v. Gray, 2003 OK 10, ¶ 43, 65 P.3d 591, 608 (quoting Bd. of Regents of Univ. of Oklahoma v. Nat'l Collegiate Athletic Ass'n, 1977 OK 17, ¶ 3, 561 P.2d 499, 502). Underlying questions of law are reviewed de novo. Lierly v. Tidewater Petroleum Corp., 2006 OK 47, ¶ 16, 139 P.3d 897, 903. An issue presented in this cause is one of statutory interpretation. Statutory interpretation presents a question of law which this Court reviews under a de novo standard. Corbeil v. Emricks Van & Storage, Guarantee Ins., 2017 OK 71, ¶ 10, 404 P.3d 856, 858.

¶10 The trial court determined Parents were likely to succeed on the merits of their Equal Protection Clause claim against District but were unlikely to succeed on the merits of their claim that the Policy violated 70 O.S.Supp.2021, § 1210.189(A)(1). We find the trial court improperly interpreted § 1210.189(A)(1) and incorrectly concluded Parents were unlikely to succeed on the merits of their claim that the Policy violates § 1210.189(A)(1). Because we determine the Policy violates 70 O.S.Supp.2021, § 1210.189(A)(1), we need not address the Equal Protection Clause argument.

III. DISCUSSION

¶11 On March 15, 2020, Oklahoma Governor, J. Kevin Stitt, declared a statewide emergency due to the coronavirus pandemic and its threat to the people of this State and their peace, health, and safety.[4] The Governor rescinded his emergency declaration on May 3, 2021.[5] Subsequently, the Oklahoma Legislature passed Senate Bill 658 in May of 2021, which was signed into law on May 28, 2021.

¶12 Senate Bill 658 made additions and amendments to school health and safety statutes within 70 O.S.2011, §§ 1210.191-1210.194. Specifically, Senate Bill 658 created two new sections, 70 O.S.Supp.2021, §§ 1210.189 and 190.[6] The relevant section here is § 1210.189. Section 1210.189 concerns restrictions on a school district's ability to mandate COVID-19 vaccinations and mask mandates. More specifically, § 1210.189 provides:

A. A board of education of a public school district or a technology center school district, the board of regents of an institution within The Oklahoma State System of Higher Education, the governing board of a private postsecondary educational institution, the Oklahoma State Regents for Higher Education, the State Board of Education or the State Board of Career and Technology Education shall not:

1. Require a vaccination against Coronavirus disease 2019 (COVID-19) as a condition of admittance to or attendance of the school or institution;

2. Require a vaccine passport as a condition of admittance to or attendance of the school or institution; or

3. Implement a mask mandate for students who have not been vaccinated against COVID-19.

B. As used in this section, "vaccine passport" means documentation that an individual has been vaccinated against COVID-19.

C. Nothing in this section shall be construed to apply to any public or private healthcare setting.

The subsection at issue before us is § 1210.189(A)(1).

¶13 Before the trial court, Parents and the Attorney General argued the Policy violates § 1210.189(A)(1) because the Policy's quarantine requirement for unvaccinated students effectively excludes those students from attending school due to their COVID-19 vaccination status. District made several arguments in response to demonstrate the Policy does not violate § 1210.189(A)(1). First, District argues the Policy is not based on COVID-19 vaccination status, pointing out that hundreds of unvaccinated students attend school within the district each day. Specifically, District contends COVID-19 vaccination status is not the only condition that triggers whether a student is required to quarantine. Rather, District asserts what determines whether a student should be temporarily quarantined is evidence of that student's heightened immunity to COVID-19. District highlights that the Policy references three types of students exposed to a positive COVID-19 case: (1) vaccinated students; (2) unvaccinated students who have tested positive for COVID-19 within the previous ninety days; and (3) unvaccinated students who have not tested positive for COVID-19 within the previous ninety days.

¶14 To the extent District uses a student's vaccination status as a factor of whether they can attend school, § 1210.189(A)(1) is violated. The statute explicitly prohibits school districts from utilizing a student's COVID-19 vaccination status as a condition of whether he or she may attend school in-person. The Policy's consideration of whether a student has tested positive for COVID-19 within the previous ninety days in addition to a student's COVID-19 vaccination status does not cure the violation. If we were to conclude that the Policy does not violate § 1210.189(A)(1) because the Policy also factors in whether a student has tested positive for COVID-19 within the previous ninety days, the result would run contrary to the intent and plain language of the statute. Interpreting the Policy's condition for quarantine as a level of heightened immunity is a distraction from what the Policy on its face and in practice accomplishes: conditioning a student's attendance of school on COVID-19 vaccination status. Accordingly, District's argument on this point fails.

¶15 Second, District contends quarantined students that participate in virtual learning are counted in "attendance;" therefore, the Policy does not violate § 1210.189(A)(1). Parents and the Attorney General argue "attendance" means physical, in-person attendance. Conversely, District argues that in light of the pandemic, "attendance" is not limited to physical, in-person attendance because of the implementation of virtual learning.

¶16 "The cardinal rule of statutory interpretation is to ascertain and give effect to legislative intent and purpose as expressed by the statutory language." Odom v. Penske Truck Leasing Co., 2018 OK 23, ¶ 17, 415 P.3d 521, 528. "It is presumed that the Legislature has expressed its intent in a statute's language and that it intended what it so expressed." Id. "Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each." Keating v. Edmondson, 2001 OK 110, ¶ 8, 37 P.3d 882, 886. "Only where legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity, are rules of statutory interpretation employed." Odom, ¶ 18, 415 P.3d at 528.

¶17 To ascertain legislative intent, we begin with the text. The plain meaning of "attendance" is "the act or fact of attending something."[7] The plain meaning of "attend" is "to be present at: to go to."[8] Nothing in the text suggests the Legislature intended for "attendance" to mean anything more than in-person, physical attendance. Odom, ¶ 17, 415 P.3d at 528 ("It is presumed that the Legislature has expressed its intent in a statute's language and that it intended what it so expressed."); Stemmons, Inc. v. Universal C.I.T. Credit Corp., 1956 OK 221, ¶ 21, 301 P.2d 212, 216 ("In absence of an attempt to define any of the terms used in the statutes in question, it must be presumed the legislature considered it unnecessary to define particular words and phrases, and that it was intended only that same bear their usual and commonly accepted meaning."). We find "attendance" unambiguous.

¶18 Though we need not explore other provisions within Title 70 to aid us in ascertaining the Legislature's intent, doing so leads us to the same conclusion. Reading 70 O.S.2011, § 1210.194 in conjunction with § 1210.189(A)(1), it is clear the Legislature intended for "attendance" to mean in-person, physical attendance. Section 1210.194 discusses the prohibition of students from attending school when afflicted by a contagious disease or head lice. Subsection (A) provides "[a]ny child afflicted with a contagious disease . . . may be prohibited from attending a public . . . school until such time as he is free from the contagious disease . . . ." 70 O.S.2011, § 1210.194(A) (emphasis added). It would be absurd to conclude the Legislature intended for "attending" to mean anything other than in-person physical attendance. Ledbetter v. Oklahoma Alcoholic Beverage L. Enf't Comm'n, 1988 OK 117, ¶ 7, 764 P.2d 172, 179 ("[S]tatutory construction that would lead to an absurdity must be avoided and a rational construction should be given to a statute if the language fairly permits.").

¶19 While it appears that District's intention was to curb the spread of COVID-19, the Policy effectively prohibits unvaccinated students from attending school when exposed to COVID-19 because of their COVID-19 vaccination status. Because we hold "attendance" means in-person, physical attendance, we find the Policy violates § 1210.189(A)(1). Accordingly, the trial court erred when it concluded Parents were unlikely to succeed on the merits of their claim the Policy violates 70 O.S.Supp.2021, § 1210.189(A)(1).

¶20 Our determination that "attendance" unambiguously means in-person, physical attendance renders it unnecessary to address the other construction-based arguments proffered by District. "A cardinal precept of statutory construction is that where a statute's language is plain and unambiguous, and the meaning clear and unmistakable, no justification exists for the use of interpretive devices to fabricate a different meaning." Keating v. Edmonson, 2001 OK 110, ¶ 15, 37 P.3d 882, 888. District's suggestion that we look to the State Board of Education's administrative code 2021 amendment for an alternate definition of "attendance" runs counter to our principles of statutory construction. "[A]dministrative construction of a statute will not override the plain statutory language." Id. We will not look to the administrative code to override the plain meaning of an unambiguous statutory term.

¶21 Lastly, we also find the trial court erred when it interpreted 1210.189(A)(1) as "prohibit[ing] a school district from placing an unvaccinated student into quarantine, even if that student was symptomatic and/or tested positive for COVID-19."[9] District retains the statutory authority to exclude a student from the school premises if afflicted with a contagious disease.[10]

 

IV. CONCLUSION 

 

¶22 District adopted a quarantine policy in response to a dramatic spike in positive COVID-19 cases. The Policy effectively prohibited students from attending school in-person based upon their COVID-19 vaccination status, in violation of 70 O.S.Supp.2021, § 1210.189(A)(1). Thus, the trial court improperly interpreted § 1210.189(A)(1) and erred by determining Parents would likely be successful on the merits of their Equal Protection Clause claim.

¶23 With the passage of 70 O.S.Supp.2021, § 1210.189(A)(1), the Legislature divested school districts from establishing policies that condition a student's school attendance on their COVID-19 vaccination status. We find District's policy violates § 1210.189(A)(1). The trial court's order is vacated and declaratory judgment is granted in favor of Parents.

MATTER PREVIOUSLY RETAINED FOR DISPOSITION;
ORDER OF THE DISTRICT COURT VACATED;
DECLARATORY JUDGMENT GRANTED. 

Kane, C.J., Rowe, V.C.J., Winchester, Darby and Kuehn, JJ., concur.

Kauger, J. (by separate writing), Edmondson, Combs (by separate writing), and Gurich, JJ., dissent.

FOOTNOTES

[1] "In the case of a quarantine notification, parents will be notified if their child has been in close contact with a positive case, and the parent will be responsible for carrying out the quarantine or not." Ex. to Pls.' Appl. for Temporary Inj., Defs.' Ex. 9.

[2] "Defined as being within six feet of a positive individual for a period of 15 minutes or more or within three feet if both parties are masked." Temporary Inj. Order 2, n.2.

[3] The Policy was initially provided to parents through a letter sent via email on August 18, 2021. See Ex. To Pls.' Appl. For Temporary Inj. Defs.' Ex. 3. Included on the letter was a link to District's website, edmondschools.net, which provided the specific protocols to be followed starting August 18, 2021. See Ex. to Pls.' Appl. for Temporary Inj., Defs.' Ex. 4.

[4] The Governor's Executive Order 2020-07, filed with the Oklahoma Secretary of State on March 15, 2020, states in pertinent part:

Therefore, I, J. Kevin Stitt, Governor of the State of Oklahoma, pursuant to the power vested in me by Section 2 of Article VI of the Oklahoma Constitution, hereby declare and order the following:

1. There is hereby declared an emergency caused by the impending threat of COVID-19 to the people of this State and the public's peace, health, and safety.

Exec. Order No. 2020-07, https://www.sos.ok.gov/documents/executive/1913.pdf.

[5] The Governor's Executive Order 2021-11, filed with the Oklahoma Secretary of State on May 3, 2021 states in pertinent part:

I, J. Kevin Stitt, Governor of the State of Oklahoma, pursuant to the power vested in my by Section 2 of Article VI of the Oklahoma Constitution hereby order:

Effective May 4, 2021, Second Amended Executive Order 2021-07 is withdrawn and rescinded.

Exec. Order No. 2021-11, https://www.sos.ok.gov/documents/executive/1999.pdf.

[6] In Ritter v. State, 2022 OK 73, 520 P.3d 370, this Court determined 70 O.S.Supp.2021, §§ 1210.189 and 190 were an unconstitutional, impermissible delegation of Legislative authority. However, the objectionable provision was stricken, and the remainder of the statute was upheld as constitutional. The text that was stricken arises from § 1210.190(A)(1) which provides:

A. A board of education of a public school district or a technology center school district may only implement a mandate to wear a mask or any other medical device as provided in this subsection.

1. A board of education of a public school district or a technology center school district may only implement a mandate to wear a mask or any other medical device after consultation with the local county health department or city-county health department within the jurisdiction of where the board is located and when the jurisdiction of where the board is located is under a current state of emergency declared by the Governor.

The Court determined that the emphasized language usurped local control granted by the Legislature by requiring the Governor to declare or not declare a state of emergency--an impermissible delegation of authority.

The result in Ritter has no effect on the application of § 1210.189 as it relates to the case before us, as the Court held the remainder of the statute was constitutional.

[7] Attendance, Merriam-Webster, https://www.merriam-webster.com/dictionary/attendance (visited February 8, 2023).

[8] Attend, Merriam-Webster, https://www.merriam-webster.com/dictionary/attend (visited February 8, 2023).

[9] Temporary Inj. Order 6.

[10] 63 O.S.Supp.2021, § 1-507 and 70 O.S.2011, § 1210.194 provide school districts the ability to prohibit a student afflicted with a contagious disease from attending school. Thus, if an unvaccinated student exhibited symptoms of COVID-19 and/or tested positive, District retains the statutory authority to exclude student from the school premises.

63 O.S.Supp.2021, § 1-507 provides:

No person having a communicable disease shall be permitted to attend a private or public school, and it shall be the duty of the parent or guardian and the school of such person to exclude from the school such person until the expiration of the period of isolation or quarantine ordered for the case, or until permission to do so shall have been given by the local county health department or the State Department of Health.

70 O.S.2011, § 1210.194(A) provides:

Any child afflicted with a contagious disease or head lice may be prohibited from attending public, private, or parochial school until such time as he is free from the contagious disease or head lice.

 

 

KAUGER, J., with whom Gurich, J. joins, dissenting:

¶1 I agree with the dissent by Justice Combs for yet another reason. The Oklahoma Constitution art. 13 §4 addresses compulsory school attendance and the possibility of alternatives. It provides:

The Legislature shall provide for the compulsory attendance at some public or other school, unless other means of education are provided, of all the children in the State who are sound in mind and body, between the ages of eight and sixteen years, for at least three months in each year.

¶2 Although the framers did not anticipate virtual schooling, they were prescient by recognizing that another means, other than actual attendance, was possible to fulfill the attendance requirement.

 

 

COMBS, J., with whom KAUGER, EDMONDSON, and GURICH, JJ., join, dissenting:

¶1 I dissent from the majority's judgment. Their judgment vacating the trial court's temporary injunction in favor of Appellee Parents but then granting declaratory judgment in favor of Parents is most irregular. The irregular judgment is a product of the majority's unconventional approach to appellate review in this case. Had the majority chosen to address the issues raised in Appellant District's Petition in Error and Brief in Chief--i.e., issues related to the trial court's findings that Parents would likely succeed on their claim that the District's COVID-19 quarantine policy violated the Equal Protection rights of Parents' children, that Parents' evidence supported a finding of irreparable harm, and that the threatened injury to Parents' children outweighed any potential injury to the District, see Pet. in Error ex. C (listing seven "ISSUES TO BE RAISED ON APPEAL); Br. in Chief of Appellants ii (listing five propositions in the brief's index)--the majority would predictably either affirm or reverse the trial court's temporary injunction. Instead, the majority opines upon an issue that is not before this Court for appellate review--i.e., whether the trial court erred in its interpretation of 70 O.S.2021, § 1210.189(A)(1) and in its resulting denial of Appellee Parents' request for declaratory relief on that basis--because neither party has raised it.

¶2 It should go without saying that arguments which have not been presented in the petition in error or in the parties' briefs should be treated as abandoned, waived, or not preserved for appellate review. See Reddell v. Johnson, 1997 OK 86, ¶ 6, 942 P.2d 200, 202 ("An appellate court is generally confined to the issue raised by the parties and presented by the proof, pleadings, petition in error and briefs. It is the duty of the parties to frame the issues." (citations omitted)); Okla. Turnpike Auth. v. Little, 1993 OK 116, ¶ 10, 860 P.2d 226, 228 ("Generally, this Court will not consider or review errors or issues that have not been raised by the petition in error."); State ex rel. Remy v. City of Norman, 1981 OK 139, ¶ 12, 642 P.2d 219, 222 ("Any assignments of alleged error not presented in the briefs will be treated as abandoned."). The District did not raise any error concerning the trial court's statutory construction of section 1210.189(A)(1) and indeed would have no interest in raising an issue the trial court decided in its favor; and Parents never filed a counter-appeal to raise that issue. In fact, as the majority acknowledges, the issue has been raised only in the Oklahoma Attorney General's amicus brief (filed during the tenure of former Attorney General John O'Connor), and "[n]either Parents nor District [have] filed a response" thereto. Majority Op. ¶ 6. The parties did not preserve the issue for appellate review, and there is consequently no basis for the majority to render their judgment on appeal vacating the trial court's temporary injunction and granting declaratory judgment in Parents' favor.

¶3 Faced with the issues actually presented in this appeal, I would have reversed the trial court's temporary injunction because I do not believe Parents would likely succeed on Equal Protection grounds. The guidance from both the city-county health department and the CDC serve as a rational basis for the District's implementation of a quarantine policy that differentiates between students who have either been vaccinated against or recently recovered from COVID-19 and students who have not.

¶4 But I also write separately because I disagree with the majority's statutory construction of section 1210.189(A)(1). The District's quarantine policy does not violate section 1210.189(A)(1)'s prohibition against "requir[ing] a vaccination . . . as a condition of admittance to or attendance of the school or institution." That's because, as the trial court recognized, section 1210.189 "is silent and makes no mention of a school district's authority to quarantine students." ROA p.000107, Order on Temporary Inj. 7. Nothing about that statutory provision prevents the school district from implementing a common-sense quarantine policy based upon input from the local city-county health department that differentiates between students whose immune systems are bolstered against infection through either vaccination or recent prior infection and other students. If the Legislature wanted to curb such quarantine policies, it could have included language to that effect. It didn't.

¶5 Instead, the Legislature drafted section 1210.189 to prevent school districts from imposing vaccine mandates that would condition annual enrollment and admittance upon proof of vaccination. Looking at the overall scheme of the legislative bill that enacted section 1210.189, i.e., Senate Bill 658 of the he 58th Legislature's First Regular Session, it becomes clear what the Legislature was trying to do. On one hand, existing statutory law in section 1210.191(A) provided that "[n]o minor child shall be admitted to any public, private or parochial school operating in this state unless and until certification is presented to the appropriate school authorities . . . that such child has received or is in the process of receiving, immunizations" against a laundry list of contagious diseases. By enacting section 1210.189(A)(1), the Legislature demonstrated that it didn't want school districts to use the COVID-19 vaccine in a similar way. That is, the Legislature didn't want school districts to be able to exclude children from enrollment, admittance, and attendance at their schools indefinitely unless and until proof of a COVID-19 vaccination was provided. So the Legislature enacted section 1210.189(A)(1) to prevent long-term exclusion of large portions of the student body. Section 1210.189(A)(1) was not targeted at quarantine policies, as such policies would only exclude a limited amount of exposed and sick children, would only prevent daily attendance for a week or two, and would not condition the children's ultimate return upon whether they went and got the vaccine.

¶6 Nothing in the Legislature's use of the phrase "attendance of" indicates an intent to target quarantine policies. Although section 1210.189(A)(1) prohibits school districts from requiring a COVID-19 vaccine "as a condition of admittance to or attendance of the school or institution," 70 O.S.2021, § 1210.189(A)(1) (emphasis added), that does not mean that school districts cannot prevent unvaccinated students from attending school after they've contracted or been exposed to COVID-19. Nor does it mean that school districts cannot impose on unvaccinated students a slightly longer period of quarantine. The majority opines that a student's vaccination status cannot be used to prevent attendance of any kind--not even for one day. I disagree.

¶7 The statute only concerns yearly enrollment and thus does not prohibit or otherwise implicate any policy governing short-term quarantines. Although I concede that "attendance" can be used to refer to the daily presence of a student in class, I would point out that "attendance" can also be used in a more generic sense to refer to the year-long presence of a student at the institution. The former meaning can be clearly perceived in section 1210.194, where "[a] child afflicted with a contagious disease or head lice may be prohibited from attending a public, private, or parochial school" on a daily basis "until such time as he is free from the contagious disease or head lice." 70 O.S.2021, § 1210.194(A) (emphasis added). The latter meaning comes to bear, however, in language added to section 1210.191 via the same bill that created section 1210.189 (i.e., Senate Bill 658), where "school attendance" is used interchangeably with "school enrollment." 70 O.S.2021, § 1210.191(E) (emphasis added). I conclude that section 1210.189 must be using "attendance" in the latter sense for two reasons. First, within the context of the legislative bill, we've already seen that the Legislature employed the term "attendance" in its amendment of section 1210.191(E) to mean "enrollment." Act of May 28, 2021, ch. 575, sec. 1, § 1210.191(E), 2021 Okla. Sess. Laws 4442, 4443. Thus, we know that's the meaning the Legislature had in mind when it used the same term again in section 1210.189(A)(1). Id. sec. 2, § 1210.189(A)(1), 2021 Okla. Sess. Laws at 4444. Second, if there was any doubt left, we could employ the canon of construction known by its Latin name noscitur a sociis--which roughly translates to "it is known by its associates"--to conclude that "attendance" means annual presence at the school. In section 1210.189(A)(1) and (2), the phrase "attendance of" is grouped together with "admittance to." As already seen in section 1210.191(A), admittance entails the process of enrollment and acceptance into a school for the coming year. Thus, "attendance of" is merely another way of saying "admittance to." Consequently, section 1210.189(A)(1)'s use of the term "attendance" does not indicate that school districts cannot use quarantine policies to prevent unvaccinated students from attending school for a short period of time.

¶8 Lastly, I disagree with the majority's statutory construction of section 1210.189(A)(1) because, even if I assume the statute prohibits certain types of quarantine policies, the District's quarantine policy did not prevent the children's "attendance" and thus did not run afoul of section 1210.189(A)(1). District argues that, because the statute does not define "attendance" (i.e., it neither limits "attendance" to physical, in-person presence in the classroom nor excludes virtual presence), Parents' children are able to "attend" school despite their status as unvaccinated such that section 1210.189(A)(1) is not violated. The majority wrongly rejects District's argument, relying solely on a dictionary that defines the verb "attend" as "to be present at; to go to." Majority Op. ¶ 17 & n.8 (citing an online version of the Merriam-Webster dictionary). As I read it, that definition cuts against the majority, because a student who virtually attends class is "present" for purposes of receiving instruction just the same as other students who are physically in the classroom. In fact, under the State Department of Education's governing regulations, the school can mark a student who virtually attends as "present" rather than absent in their attendance records. See Okla. Admin. Code § 210:35-21-2(a) (defining "[a]lternative instructional delivery systems" to include, as of August 2021, "distance learning plan[s]" and "virtual instruction"); id. § 210:35-21-2(c)(1)(C)(iii) (setting forth attendance policies for virtual instruction programs). Moreover, even if the children weren't "present" in any sense, whether physically or virtually, it appears the District's quarantine policy did not prevent children's attendance insofar as the trial court found that "[t]he District counted all P[arent]s' children as being in attendance for any day they quarantined as a result of being a close contact of a positive case of COVID-19." ROA p.000103, Order on Temporary Inj. ¶ 8, at 3. Consequently, nothing about the District's different treatment of vaccinated and unvaccinated children under the quarantine policy prevented Parents' children from being in "attendance," from receiving instruction, and from receiving credit for their presence and participation. Absent any policy preventing attendance at the school, there can be no violation of section 1210.189(A)(1).

¶9 For all these reasons, I respectfully dissent.

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1988 OK 117, 764 P.2d 172, 59 OBJ 2936, 
Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'n
Discussed

 
1993 OK 116, 860 P.2d 226, 64 OBJ 2879, 
Oklahoma Turnpike Authority v. Little
Discussed

 
1997 OK 86, 942 P.2d 200, 68 OBJ 2333, 
REDDELL v. JOHNSON
Discussed

 
1956 OK 221, 301 P.2d 212, 
STEMMONS, INC. v. UNIVERSAL C.I.T. CREDIT CORP.
Discussed

 
2001 OK 110, 37 P.3d 882, 72 OBJ 3672, 
KEATING v. EDMONDSON
Discussed at Length

 
2003 OK 10, 65 P.3d 591, 
CHRISTIAN v. GRAY
Discussed

 
2006 OK 47, 139 P.3d 897, 
LIERLY v. TIDEWATER PETROLEUM CORPORATION
Discussed

 
2013 OK 50, 304 P.3d 457, 
DOWELL v. PLETCHER
Discussed

 
1977 OK 17, 561 P.2d 499, 
BD. OF REGENTS, ETC. v. NAT. COLLEGIATE ATH. ASS'N
Discussed

 
2015 OK 58, 378 P.3d 54, 
EDWARDS v. BOARD OF COUNTY COMMISSIONERS
Discussed

 
2016 OK 47, 371 P.3d 1094, 
MURLIN v. PEARMAN
Discussed

 
2017 OK 71, 404 P.3d 856, 
CORBEIL v. EMRICKS VAN & STORAGE
Discussed

 
2018 OK 23, 415 P.3d 521, 
ODOM v. PENSKE TRUCK LEASING CO.
Discussed

 
2022 OK 73, 520 P.3d 370, 
RITTER v. STATE
Discussed

 
1981 OK 139, 642 P.2d 219, 
State ex rel. Remy v. City of Norman
Discussed

Title 63. Public Health and Safety

 
Cite
Name
Level

 
63 O.S. 1-507, 
Schools - Attendance of Diseased Pupils
Discussed

Title 70. Schools

 
Cite
Name
Level

 
70 O.S. 1210.189, 
Restrictions on Requiring Vaccinations - Vaccine Passport - Mask Mandate
Discussed at Length

 
70 O.S. 1210.191, 
Certification - School Children - List of Immunization Tests Required - Requirements of Parents - Exemptions
Discussed

 
70 O.S. 1210.194, 
Children Afflicted with Contagious Disease or Head Lice May Be Prohibited from Attending School
Discussed at Length

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA