KITE v. CULBERTSON
2025 OK 3
Case Number: 121418
Decided: 01/14/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 3, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

HEATHER LAUREN KITE, and MINOR CHILDREN, Plaintiffs/Petitioners/Appellees,
v.
JESSICA LYNN CULBERTSON Defendant/Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY
Honorable, Sara Murphy Bondurant, Trial Judge

¶0 After the appellee, Heather Kite, and the appellant, Jessica Culbertson got into a physical altercation, Kite sought a Victim's Protection Order (VPO) against Culbertson, in the District Court of Oklahoma County. Culbertson was the live-in girlfriend of the father of Kite's two children with whom Kite shares joint custody. The trial court granted a VPO, prohibiting Culbertson from contact with Kite or her children for five years. Culbertson appealed, arguing that the trial court erred in issuing the VPO. We retained the cause to review whether the trial court abused its discretion by issuing the VPO. We hold that it did not.

APPEAL PREVIOUSLY RETAINED; DISTRICT COURT AFFIRMED

Phillip P. Owens, II, Oklahoma City, Oklahoma, for Plaintiff/Petitioner/Appellee Kite.

Ryan J. Reaves, Miguel Garcia, Oklahoma City, Oklahoma, for Defendant/Respondent/Appellant.

PER CURIAM:

¶1 We previously retained this cause to address whether the trial court erred in issuing the VPO because, as the defendant argues: 1) joint custodial parents have to agree to seek a VPO on their children's behalf in order to protect their children from domestic abuse; 2) the Protection from Domestic Violence Act (the Act) requires a criminal conviction before the civil VPO may be issued; and 3) the trial court was required to allow the mother and children to be deposed by the substituted attorney before issuing a final VPO.

I. FACTS

¶2 On December 14, 2022, the appellee, Heather Lauren Kite (Kite/mother) filed a Petition for Victim's Protective Order (VPO) in the District Court of Oklahoma County, Oklahoma, against the appellant, Jessica Lynn Culbertson (Culbertson/girlfriend). Culbertson is the live-in girlfriend of Kite's ex-boyfriend and co-custodial parent, Cody Sturgell (Sturgell/father). Culbertson has three children, a seventeen, fourteen, and twelve year-old who reside with Culbertson and Sturgell. Kite requested the VPO against Culbertson on behalf of herself and her two children, nine-year-old LLS, and eleven-year-old MJAS, pursuant to the Protection from Domestic Abuse Act, 22 O.S. 2021 §60

¶3 The VPO was precipitated by an incident which occurred on December10, 2022, while MJAS and LLS were at their father's home for visitation. According to Kite, a few days before the visitation, both children expressed to her fear of returning to visit their father and his girlfriend. On December 7, 2022, after the children arrived at the father's house, MJAS contacted the mother via multiple text messages and expressed that she was "scared and wanted to run away," which the mother discouraged. On December 10, 2022, the day of the incident, MJAS called and texted the mother several times during the day, expressing what the mother described as increasingly severe distress and fear for her safety.

¶4 The day of December 10, 2022, culminated with MJAS, at some point, refusing to get out of the girlfriend's car in the father's driveway after a dispute over a seating arrangement with the other children. MJAS began a Facetime call with her mother, and the mother heard the girlfriend cursing and screaming at MJAS. Culbertson also threatened to punch and kick MJAS if she didn't get out of the car. Kite and her husband immediately drove to the father's nearby home, where the mother joined in the confrontation while her husband videoed it.

¶5 According to the mother, the girlfriend yelled at her, charged her, and attempted to strangle her in front of the children. Culbertson also shoved and swung at her before the father and a 14-year-old pulled her away. The mother called the police while the girlfriend continued to yell, curse, and verbally threatened to attack her again. As the mother was leaving the scene with MJAS, a police officer met her off the premises where the mother also expressed fear because she was not able to retrieve LLS.

¶6 The officer completed a welfare check at the father's home, but did not retrieve LLS. In addition to recording the incident, the mother took photos of her neck where Culbertson had tried to strangle her. She also reported the matter to the Department of Human Services and sent information to OKDHS Child Abuse Hotline.

¶7 Kite's application for the VPO sought both an emergency Ex Parte Order and, after notice and a hearing, a final VPO prohibiting the girlfriend from having any contact with the mother or MJAS and LLS. On December 15, 2022, the trial court entered the Emergency Ex Parte Order, and set a hearing for December 29, 2022.

¶8 Both the mother and the girlfriend appeared at the December hearing. The girlfriend argued that the mother could not obtain a VPO against the girlfriend because of the lack of a relationship between the two. (Although the girlfriend's attorney conceded that the real issue was not a VPO between the two adults, but rather between the girlfriend and the children.) The girlfriend's attorney also notified the trial court Culbertson had been charged criminally with assault and battery in the City of Edmond Municipal Court with an arraignment scheduled for January 26, 2023. The trial court continued the cause to allow Culbertson to resolve her charges of assault and battery in the Edmond Municipal Court. Subsequently, she pled guilty to disorderly conduct to avoid a trial.

¶9 The trial court held an additional hearing on January 12, 2023, continuing/extending the Emergency VPO until June 5, 2023. On May 24, 2023, the girlfriend filed a notice of substituted attorney, and on June 2, 2023, her new attorney filed a motion seeking either a dismissal, or alternatively, a request for a continuance to depose the mother and children. The basis of the dismissal argument was that the mother does not have standing to bring a VPO against Culbertson, and only one custodial parent could not seek a VPO on behalf of the children, unless both custodial parents agreed to it.

¶10 The trial court held a hearing on June 5, 2023, with the attorneys present for the mother, the father, and the girlfriend, as well as the children's guardian ad litem and child advocate. The trial court proceeded with a trial, denying all of Culbertson's motions.

¶11 At the conclusion of the hearing the trial court determined that the mother was physically harmed by the girlfriend, and that the girlfriend threatened MJAS with imminent and repeated physical harm and threats as well as harassed and stalked her to the extent it interfered with MJAS's safety and well-being. The court also determined that LLS witnessed the events and was also affected by it. On June 5, 2023, the trial court issued a Final Order VPO, prohibiting contact, either directly or indirectly, including social media, with either the mother or MJAS and LLS for a period of five years.

¶12 The girlfriend appealed on June 30, 2023, and we retained the appeal on July 18, 2023. An issue developed regarding locating the court reporter to determine if the court reporter was present at the January 12, 2023, hearing. Consequently, the briefing was completed on May 29, 2024, and the cause was assigned for an opinion on June 10, 2024.

II. Standard of Review

¶13 Statutory construction presents a question of law which we review de novo.

III. The Trial Court Did Not Abuse Its Discretion In Issuing The VPO:
The Protection From Domestic Abuse Act and Seeking a VPO Under It.

¶14 Culbertson argues that Kite had no authority to seek a VPO for herself or her children because Culbertson was not convicted of any crime. Rather, she only pled guilty to disorderly conduct in municipal court. Culbertson also complains that Kite could not pursue a VPO on her children's behalf because the father of the children and co-joint custodian did not agree to it.

¶15 Kite argues that Culbertson's arguments are unpersuasive, circuitous, and represent a tortured analysis of both the Act, and joint custody arrangements. We agree. The Act's clear purpose is preventative, and it provides immediate civil, nonmonetary relief for victims protected by the Act's provisions.

¶16 How does it work? The Act allows certain people to seek relief. Adults and any minor age sixteen or seventeen may seek relief if they are: 1) a victim of domestic abuse; 2) a victim of stalking; 3) a victim of harassment; 4) a victim of rape; or 5) a victim of a crime. An adult or emancipated minor household member may seek relief on behalf of any other family or household member who is a minor or incompetent.

¶17 The Act does not appear to require a criminal conviction to determine what constitutes a "crime." Nor does it reference "abuse" in terms of child abuse which is defined in the Oklahoma Children's Code at 10A O.S. 1-1-105 as "harm or threatened harm to the health, safety, or welfare of a child by a person responsible for the child's health, safety, or welfare."

2. "Domestic abuse" means any act of physical harm or the threat of imminent physical harm which is committed by an adult, emancipated minor, or minor child thirteen (13) years of age or older against another adult, emancipated minor or minor child who is currently or was previously an intimate partner or family or household member;

Harassment is defined as:

5. "Harassment" means a knowing and willful course or pattern of conduct by a family or household member or an individual who is or has been involved in a dating relationship with the person, directed at a specific person which seriously alarms or annoys the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress and must actually cause substantial distress to the person. "Harassment" shall include, but not be limited to, harassing or obscene telephone calls in violation of Section 1172 of Title 21 of the Oklahoma Statutes and fear of death or bodily injury;

Both domestic abuse and harassment refer to family and household members

which are defined as:

3. "Family or household members" means:
a. parents, including grandparents, stepparents, adoptive parents and foster parents,
b. children, including grandchildren, stepchildren, adopted children and foster children,
c. persons otherwise related by blood or marriage living in the same household,
d. persons otherwise related by blood or marriage, or
e. persons not related by blood or marriage living in the same household;

7. "Living in the same household" means:
a. persons who regularly reside in the same single- dwelling unit,
b. persons who resided in the same single-dwelling unit within the past year, or
c. persons who have individual lease agreements whereby each person has his or her own private bedroom and shares the common areas;

¶18 The Act is broadly written to effectuate its purpose. This is evidenced by 22 O.S. Supp. 2022 §60.2

¶19 In Curry v. Streater, 2009 OK 5213 P.3d 550

¶20 When the person seeking relief is unrelated to the defendant, the person seeking relief must file a complaint against the defendant with the proper law enforcement agency before filing a petition for a protective order with the district court.

¶21 Kite filed a complaint with police, as well as DHS, before filing the Petition for the VPO. The satisfaction of actionable criminal charges is not required anywhere in the Act. This is because, as we stated in Curry v. Streater, supra, the Act is a preventative civil remedy to effectuate immediate relief to prevent violence, or in this case, further violence, before it happens again.

¶22 Kite detailed the events of December 10, 2022, at trial. She testified that the children were afraid Culbertson was going to kill her and hurt them. She also supplemented her testimony with pictures of the red marks Culbertson left on her neck, the police report and the video of the incident which was played without objection. Kite also secured counseling for the children after the incident.

¶23 The father gave his version of the events which included the kids fighting, MJAS screaming and yelling and refusing to get out of the car and Kite arriving screaming, yelling, and cursing. He attempted to call Kite three times before she arrived to seek help in de-escalating the situation. LLS quickly went inside and it all happened so fast that he did not see Culbertson do anything physical to Kite or yell at her. He also confirmed that DHS contacted and interviewed them after the incident but took no further action.

¶24 Culbertson essentially admitted that she attempted to harm Kite in front of MJAS. The child testified in chambers with counsel, the guardian ad litem, and the child advocate present without objection. The scope of the in chambers testimony was limited to the events of December 10, 2022, but exactly what was said is not in the record on appeal. However, the child advocate did, on the record, express that listening to the child describe the events, and recite her trauma, fear, and sadness was painful. She believed both children saw the attack on their mother, both children were deeply affected by it, and a VPO should be issued for both children.

¶25 The weight of the evidence reflects that Culbertson did assault and batter Kite, and that Kite was the victim of Culbertson's attack.

¶26 The weight of the evidence also reflects that Culbertson threatened to assault and batter MJAS and that LLS witnessed a portion of the events and both children suffered distress and/or trauma from it. The testimony from the mother was that Culbertson caused both children fear, and anxiety on both scheduled visits, and on the day of the attack. This evidence satisfies the plain statutory definition of domestic abuse and harassment under the Act.

¶27 While the threats or harm may not have been directed at LLS, the trial court determined that the threat of harm was sufficient to include LLS within the realm of the VPO under the facts and circumstances of this cause. As a resident of the father's home, Culbertson was consistently present when the father had physical custody of the children. She was also, on occasion, the primary caretaker of the children in the father's absence.

¶28 Culbertson argues that Kite was required to get the father's consent before seeking a VPO or attorney representation on behalf of her children because allowing a joint-custodial parent to utilize the statute to protect her children without his consent undermines his right to participate in fundamental decisions regarding his children.

¶29 According to the discussions and arguments at the June 5, 2023, trial, Culbertson's attorney for her criminal case, ended up being her new, substitute attorney in this cause about a month before the trial. At trial, the substitute attorney asked, alternatively, if the trial court were not going to dismiss the cause, to at least grant another continuance to allow him to conduct additional discovery such as depose all of the parties involved including the children.

¶30 Title 22 O.S. 2021 §60.4

6. A final protective order shall be granted or denied within six (6) months of service on the defendant unless all parties agree that a temporary protective order remain in effect; provided, a victim shall have the right to request a final protective order hearing at any time after the passage of six months.

C. 1. At the hearing, the court may impose any terms and conditions in the protective order that the court reasonably believes are necessary to bring about the cessation of domestic abuse against the victim or stalking or harassment of the victim or the immediate family of the victim but shall not impose any term and condition that may compromise the safety of the victim including, but not limited to, mediation, couples counseling, family counseling, parenting classes or joint victim-offender counseling sessions. The court may order the defendant to obtain domestic abuse counseling or treatment in a program certified by the Attorney General at the expense of the defendant pursuant to Section 644 of Title 21 of the Oklahoma Statutes.

The trial court, pursuant to this statute stated at the June 5, 2023, trial as reflected on pages 16-17 of the transcript:

As far as a continuance request for discovery purposes, discovery is allowed, it is authorized. In fact, this Court encourages discovery in VPO matters when there's minor children involved and more information is needed to be gathered in order for -- to help the Court make a good decision.

However, we've run up against 22 O.S. 60.4 which entitled the Petitioner to have her day in court in six months unless both parties agree to a continuance under a Temporary Order. My guess is that the Petitioner is not going to agree to a continuance after this point; so there's been a whole six months in which Mr. Reaves could have conducted discovery if he represented the Respondent, or at least even the past one month for you, Counsel to conduct discovery.

The statute 60.4 doesn't give me authority, if both parties don't agree, to continue this even further. So I will deny your Motion for Continuance for further discovery requests.

¶31 The new counsel had the opportunity to cross-examine the witnesses, watch the video, look at the pictures and sit in chambers for testimony received. The trial court is tasked with reasonable scheduling practices and holding trial in a speedy and certain remedy. This is especially true in domestic matters and matters involving domestic abuse.

IV. CONCLUSION

¶32 The Act's purpose is to prevent harm, and provide immediate relief for victims of domestic abuse, stalking harassment, or rape.

¶33 APPEAL PREVIOUSLY RETAINED; DISTRICT COURT AFFIRMED.

¶34 CONCUR: ROWE, C. J.; KUEHN, V.C.J.; WINCHESTER, EDMONDSON, COMBS, GURICH, and DARBY, JJ.

¶35 NOT PARTICIPATING: KANE, J.

FOOTNOTES

1. Whether the trial court erred by finding that Petitioner had standing as the 'adult victim of a crime' prior to any plea or conviction related to the alleged criminal offense. 22 O.S. §60.2

2. Whether the trial court erred by entering an Order of Protection in favor of the Petitioner as the 'adult victim of a crime,' where Respondent allegedly committed an act against public peace, not an individual. 22 O.S. §60.2

3. Whether the trial court erred by entering an Order of Protection in favor of Petitioner as the 'adult victim of a crime,' where Respondent's alleged conduct was a municipal offense punishable by only a small fine. 22 O.S. §60.2

4. Whether the trial court erred by entering an Order of Protection in favor of the younger minor children, where there was no evidence or allegation that any conduct which qualifies for relief under the VPO statutes was directed at him. 22 O.S. §60et. seq.

5. Whether the trial court erred by finding sufficient evidence existed to support an Order of Protection in favor of the other minor child.

6. Whether the trial court erred by permitting Petitioner, who is a co-equal joint custodian of the minor children, to pursue a VPO over the objection of the other co-equal joint custodian. Muscato ex rel. Butler v. Moore, 2014 OK CIV APP. 93, 338 P.3d 643

7. Whether representation of the minor children by Petitioner's attorney represented an impermissible conflict of interest in regard to the other joint custodial parent, who objected to the representation. 5 O.S., Appx. 3-A, Rule 1.7.

8. Whether the Court erred by denying Respondent's counsel the opportunity to depose the minor children in advance of the hearing. Sunderland v. Zimmerman, 2019 OK C1V APP 27, 441 P.3d 179

Curry v. Streater, 2009 OK 5213 P.3d 550St. John Med. Ctr. v. Bilby, 2007 OK 37160 P.3d 978

22 O.S. 2021 §60

Murlin v. Pearman, 2016 OK 47371 P.3d 1094Curry v. Streater, see note 4, supra; Johnson v. Ward, 1975 OK 129541 P.2d 182

Murlin v. Pearman, see note 6, supra; Curry v. Streater, see note 4, supra; State ex rel. Tal v. Oklahoma City, 2002 OK 9761 P.3d 234

Murlin v. Pearman, see note 6, supra; Curry v. Streater, see note 4, supra; Oklahoma Tpk. Auth. v. Little, 1993 OK 116860 P.2d 226

Curry v. Streater, see note 4, supra at ¶10. The events in this cause happened in December of 2022. Section 60.1 has been amended twice since then, however the pertinent parts of §60.1 are identical to those in effect in 2022.

Murlin v. Pearman, see note 6, supra at ¶27.

Curry v. Streater, see note 4, supra at ¶10.

22 O.S. 2021 §60.2

A. A victim of domestic abuse, a victim of stalking, a victim of harassment, a victim of rape, any adult or emancipated minor household member on behalf of any other family or household member who is a minor or incompetent, any minor age sixteen (16) or seventeen (17) years, or any adult victim of a crime may seek relief under the provisions of the Protection from Domestic Abuse Act.

2. "Abuse" means harm or threatened harm to the health, safety, or welfare of a child by a person responsible for the child's health, safety, or welfare, including but not limited to nonaccidental physical or mental injury, sexual abuse, or sexual exploitation. Provided, however, that nothing contained in the Oklahoma Children's Code shall prohibit any parent from using ordinary force as a means of discipline including, but not limited to, spanking, switching, or paddling.

22 O.S. Supp. 2022 §60.2

A. A victim of domestic abuse, a victim of stalking, a victim of harassment, a victim of rape, any adult or emancipated minor household member on behalf of any other family or household member who is a minor or incompetent, any minor age sixteen (16) or seventeen (17) years, or any adult victim of a crime may seek relief under the provisions of the Protection from Domestic Abuse Act.

Murlin v. Pearman, see note 6, supra at ¶27.

Citing, Katsenelenbogen v. Katsenelenbogen, 762 A.2d 198, 207 (Md. Ct. Spec. App. 2000), vacated, 775 A.2d 1249 (Md. 2000).

Curry v. Streater, see note 4, supra at ¶11.

22 O.S. Supp. 2022 §60.2

1. The person seeking relief may file a petition for a protective order with the district court in the county in which the victim resides, the county in which the defendant resides, or the county in which the domestic violence occurred. If the person seeking relief is not a family or household member or an individual who is or has been in a dating relationship with the defendant, the person seeking relief must file a complaint against the defendant with the proper law enforcement agency before filing a petition for a protective order with the district court. The person seeking relief shall provide a copy of the complaint that was filed with the law enforcement agency at the full hearing if the complaint is not available from the law enforcement agency. Failure to provide a copy of the complaint filed with the law enforcement agency shall constitute a frivolous filing and the court may assess attorney fees and court costs against the plaintiff pursuant to paragraph 2 of subsection C of this section. The filing of a petition for a protective order shall not require jurisdiction or venue of the criminal offense if either the plaintiff or defendant resides in the county....

22 O.S. Supp. 2022 §60.2

F. A court may not require the victim to seek legal sanctions against the defendant including, but not limited to, divorce, separation, paternity or criminal proceedings prior to hearing a petition for protective order.

22 O.S. Supp. 2022 §60.2

A victim of rape, forcible sodomy, a sex offense, kidnapping, assault and battery with a deadly weapon, child abuse, or member of the immediate family of a victim of first-degree murder, as such terms are defined in Section 40 of this title, may petition, or have a petition filed on the victim's behalf if the victim is a minor, for an emergency temporary order or emergency ex parte order regardless of any relationship or scenario pursuant to the provisions of this section. The Administrative Office of the Courts shall modify the petition forms as necessary to effectuate the provisions of this subsection.

21 O.S. 2021 §641

An assault is any willful and unlawful attempt or offer with force or violence to do a corporal hurt to another.

Title 21 O.S. 2021 §642

A battery is any willful and unlawful use of force or violence upon the person of another.

Boatman v. Boatman, 2017 OK 27404 P.3d 8222001 OK 3023 P.3d 278Muscato ex rel. Butler v. Moore, 2014 OK CIV APP 93338 P.3d 64343 O.S. 2021 §112.3Muscato involved a mother seeking a protective order on behalf of her child, against the child's wishes, and of whom she the sole custodian. Culbertson also argues that Kite has other alternatives she could have utilized rather than a VPO. While this may be true, nothing requires the use of alternatives.

See, Flanderbeyer v. Dormer, 2006 OK 87152 P.3d 195

Sunderland v. Zimmerman, 2019 OK CIV APP 27441 P.3d 179Sunderland, due to the former girl friend's lack of cooperation and the trial court's refusal to apply the Discovery Code to the proceedings. Consequently the Court of Civil Appeals reversed. In this cause, Sunderland is unpersuasive here because there was opportunity for Culbertson to partake in discovery for at least six months before the final hearing. However, we do agree with the appellate court that "a trial court overseeing discovery in protective order proceedings should keep in mind the intent and purposes behind both the Discovery Code and the Act, including the speedy and inexpensive disposition of legal actions, the protection of victims of domestic abuse, and the due process interests of all civil litigants."

Curry v. Streater, see note 4, supra at ¶10.

Murlin v. Pearman, see note 6, supra at ¶27.

Murlin v. Pearman, see note 6, Curry v. Streater, see note 4, supra; Johnson v. Ward, see note 5, supra.